2004 WY 119

**James Franklin BROWN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 03–209.

Supreme Court of Wyoming.

Oct. 22, 2004.

Rehearing Denied Nov. 16, 2004.

Representing Appellant: Pro se.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Paul S. Rehurek, Deputy Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] Appellant, James Franklin Brown (Brown), maintains that the district court erred in denying his motion to correct an illegal sentence. He argues that the sentences imposed upon him after his 1990 convictions violate recently articulated constitutional principles and, therefore, those sentences must be vacated. The district court denied Brown's motion. We will affirm.

## ISSUES

[¶ 2] Brown raises this issue:

Did the district court error and abuse its discretion by denying [Brown's] motion to correct his unconstitutional and therefore illegal sentences?

The State articulates the issue thus:

Do [Brown's] life sentences for second degree sexual assault violate *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)?

In his reply brief, Brown refines his issue somewhat:

Whether pursuant to United States Supreme Court precedent, [Brown's] constitutional rights were violated when the aggravating facts and circumstances (predicate facts) used to increase his sentences were not properly found by the jury?

## FACTS AND PROCEEDINGS

[¶ 3] In 1990 Brown was convicted of five counts of second degree sexual assault and two counts of taking immodest, immoral or indecent liberties with a minor. At his arraignment, he was informed of the potential that his sentences would be enhanced to as much as life in prison if he were to be sentenced on two or more counts of second degree sexual assault. Brown was sentenced to two terms of not less than nine nor more than ten years in prison on each of the two indecent liberties counts, and to five consecutive life sentences on each of the five second degree sexual assault convictions. On direct appeal, this Court reversed one of the five convictions for second degree sexual assault,

but the judgment and sentence were otherwise affirmed. *Brown v. State*, 817 P.2d 429, 437, 440 (Wyo.1991).

[¶ 4] On June 22, 1994, Brown filed a motion to correct an illegal sentence in the district court. The district court denied the motion. Brown appealed that decision to this Court wherein we made the following holding:

> Brown claims the life sentences he received are illegal and unconstitutional. Essentially, the gravamen of Brown's appeal is that the district court sentenced him to life terms without giving any minimum term along with the maximum life term. Brown also raises a host of side issues including ineffective assistance of counsel and violations of due process, the fifth, sixth and eighth amendments.
>
> A district court's resolution of a motion to correct or reduce a sentence is entitled to considerable deference. *Montez v. State*, Wyo.1979, 592 P.2d 1153. On appeal we will not substitute our own views for those of the district court unless there is no rational basis for its conclusions. *Key v. State*, Wyo.1980, 616 P.2d 774.

*Fortin v. State*, 622 P.2d 418, 420 (Wyo. 1981). The district court denied Brown's motion, finding that he had raised similar claims in a Petition for Post–Conviction Relief and an earlier Motion to Correct an Illegal Sentence. It also concluded that the issues had already been decided by this court in *Brown v. State*, 817 P.2d 429, or were otherwise barred by W.S. 7–14–103 since they were not raised in his original petition.

> After a review of the record, we agree with the district court that Brown raises the identical issues in this proceeding that he brought in previous motions for post-conviction relief and to correct an illegal sentence. A motion to correct an illegal sentence does not permit a defendant to relitigate an issue which has already been considered and decided. *Montez v. State*, 592 P.2d 1153, 1154 (Wyo.1979). These issues are governed by the law of the case and cannot be raised in subsequent motions under W.R.Cr.P. 35(a).

> The record further discloses that any issues not previously decided are barred by W.S. 7–14–103 or are not properly matters for consideration under a W.R.Cr.P. 35(a) motion. Accordingly, the district court did not err in denying relief.

*Brown v. State*, 894 P.2d 597, 598 (Wyo.1995).

[¶ 5] On July 26, 1995, Brown filed another motion to correct an illegal sentence. The district court denied that motion also. On appeal we affirmed. *Brown v. State*, 929 P.2d 522 (Wyo.1996) (this appeal dealt with the district court's imposition of the crime victim's surcharge).

[¶ 6] On July 7, 2003, Brown filed yet another motion to correct illegal sentences, this one styled along the same lines as the instant appeal. The district court denied this motion as well, and that denial is the subject of this appeal.

## STANDARD OF REVIEW

[¶ 7] An illegal sentence is one that exceeds statutory limits, imposes multiple terms of imprisonment for the same offense, or otherwise violates constitutions or the law. The determination of whether a sentence is illegal is made by reference to the authorizing statute or applicable constitutional provisions and is, therefore, a matter of statutory interpretation. Interpretation of statutes is a question of law, which we review de novo. *Bush v. State*, 2003 WY 156, ¶ 8, 79 P.3d 1178, ¶ 8 (Wyo.2003) (citing *Ryan v. State*, 988 P.2d 46, 62–63 (Wyo.1999)).

[¶ 8] With respect to sentences very similar to those imposed on Brown, we said this in *DeLoge v. State*, 2002 WY 155, ¶¶ 10–12, 55 P.3d 1233, ¶¶ 10–12 (Wyo.2002):

> ... DeLoge contends that the statute will permit only one enhancement; that is, that the proper sentence would have been, at most, one life sentence for all six counts. In making this argument, DeLoge relies on authority construing a statute that permits enhancement of a sentence based on a previous conviction or convictions. An example of such a statute is Wyoming's "habitual criminal" statute:

6-10-201. "Habitual criminal" defined; penalties.

(a) A person is an habitual criminal if:

(i) He is convicted of a violent felony; and

(ii) He has been convicted of a felony on two (2) or more previous charges separately brought and tried which arose out of separate occurrences in this state or elsewhere.

(b) An habitual criminal shall be punished by imprisonment for:

(i) Not less than ten (10) years nor more than fifty (50) years, if he has two (2) previous convictions;

(ii) Life, if he has three (3) or more previous convictions.

Wyo. Stat. Ann. § 6-10-201 (LexisNexis 2001). DeLoge's argument falls short, however, because the plain language of § 6-2-306(b)(i) only speaks in terms of "being sentenced for two (2) or more separate acts of sexual assault in the ... second degree." There is no requirement that the convictions be "previous," as is the case with the habitual criminal statute. Our rules of statutory construction require that we construe statutes in pari materia, giving effect to each word, clause, and sentence so that no part will be inoperative or superfluous, and we must not construe a statute in a manner that renders any portion meaningless or produces an absurd result. *Abeyta [v. State,* 2002 WY 44], ¶ 9 [42 P.3d 1009 (2002)]. When we apply the applicable rules of statutory construction to this statute, we are compelled to conclude that the legislative intent is clear that a defendant who is being sentenced for two or more separate acts of sexual assault in the second degree may be sentenced to a life sentence for each separate act. *Stambaugh v. State,* 613 P.2d 1237, 1241-43 (Wyo.1980).

Next, DeLoge contends that the statute must be construed to mean that a sentence not subject to the enhancement provision must be imposed for the first count and the enhancement provision only applies to offenses subsequent to the first sentence. Again, applying the same rules of statutory construction set out above, we are com-

pelled to conclude that the rules of statutory construction do not permit us to add such language to that which the legislature provided in its unambiguous enactment. *Fullmer v. Employment Security Commission,* 858 P.2d 1122, 1124 (Wyo.1993).

DeLoge also maintains that the statute operates in a manner which violates double jeopardy because for at least one count he is punished twice, i.e., one count is used both as the underlying offense and as an offense giving rise to the enhancement provision. Again, we view this as mixing the concept of "previous" offenses used in the habitual criminal statute, with the language used in § 6-2-306(b)(i), "being sentenced for two (2) or more separate acts of sexual assault in the ... second degree." Our precedents are clear that multiple sexual assaults are separate offenses even though they might be separated by only very short time periods. *Frenzel v. State,* 938 P.2d 867, 868-9 (Wyo.1997); *Hamill v. State,* 602 P.2d 1212, 1216-17 (Wyo.1979).

*Also see Blakeman v. State,* 2002 WY 177, ¶¶ 9-10, 59 P.3d 140, ¶¶ 9-10 (Wyo.2002).

## DISCUSSION

### Application of *Jones, Apprendi,* and *Ring*

■ [¶ 9] This issue arises in the context of a sentencing provision found in Wyoming's sexual assault statutes at the time the crimes were committed. That statute has undergone some revision since that time, but because the substance of it is identical for purposes of the issue at hand, we will recite here the current version of that statute. Wyo. Stat. Ann. § 6-2-306 (LexisNexis 2003) (contemporaneous version at Wyo. Stat. Ann. § 6-2-306 (Michie 1988)):

(a) An actor convicted of sexual assault who does not qualify under the criteria of subsection (b) or (d) of this section shall be punished as follows:

(i) Sexual assault in the first degree is a felony punishable by imprisonment for not less than five (5) years nor more than fifty (50) years;

(ii) Sexual assault in the second degree is a felony punishable by imprison-

ment for not more than twenty (20) years;

(iii) Sexual assault in the third degree is a felony punishable by imprisonment for not more than fifteen (15) years;

(iv) Repealed by Laws 1997, ch. 135, § 2, eff. July 1, 1997.

(b) **An actor who is convicted of sexual assault and who does not qualify under the criteria of subsection (d) of this section shall be punished by the extended terms of subsection (c) of this section if:**

(i) **He is being sentenced for two (2) or more separate acts of sexual assault in the first or second degree;**

(ii) He previously has been convicted of any crime containing the same or similar elements as the crimes defined in W.S. 6–2–302 or 6–2–303.

(c) **An actor convicted of sexual assault who qualifies under the criteria of subsection (b) of this section shall be punished as follows:**

(i) **Sexual assault in the first or second degree is a felony punishable by imprisonment for not less than five (5) years or for life;**

(ii) Sexual assault in the third degree is a felony punishable by imprisonment for not more than twenty (20) years;

(iii) Repealed by Laws 1997, ch. 135, § 2, eff. July 1, 1997.

(d) An actor who is convicted of sexual assault shall be punished by life imprisonment without parole if the actor has two (2) or more previous convictions for any of the following designated offenses, which convictions resulted from charges separately brought and which arose out of separate occurrences in this state or elsewhere:

(i) A crime defined in W.S. 6–2–302 through 6–2–304 or a criminal statute containing the same or similar elements as a crime defined by W.S. 6–2–302 through 6–2–304;

(ii) Repealed by Laws 1997, ch. 135, § 2, eff. July 1, 1997.

(iii) A conviction under W.S. 14–3–105(a), or a criminal statute containing the same or similar elements as the crime defined by W.S. 14–3–105(a), if the circumstances of the crime involved a victim who was under the age of sixteen (16) at the time of the offense and an actor who was at least four (4) years older than the victim. [Emphasis added.]

[¶ 10] Brown contends that this statute impermissibly allows the trial court, rather than the jury, to make findings of fact as to whether the enhanced sentence allowed by the statute should be imposed. For this proposition he relies upon *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi* the United States Supreme Court dealt with a pair of New Jersey statutes. The first statute at issue was possession of a firearm for an unlawful purpose (sentence of 5–10 years), and the second was a hate crime statute (which provided for an extended term of 10–20 years if trial court found by a preponderance of the evidence that the defendant acted out of hate for certain individuals and/or groups). The question presented in that case was whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence be made by a jury on the basis of proof beyond a reasonable doubt, rather than by a trial judge. *Id.,* at 2351. Apprendi pleaded guilty to three crimes, and one of those crimes had the potential for the hate crime enhancement because it was alleged that the crime was motivated by racial bias. After accepting the guilty pleas, the trial court held a hearing and found by a preponderance of the evidence that the hate crime enhancement should be applied. In deciding *Apprendi,* the Supreme Court relied upon a previous decision to the effect that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.,* at 2355, 2362–63 (citing *Jones v. U.S.,* 526 U.S. 227, 119 S.Ct. 1215, 1224, n. 6, 143 L.Ed.2d 311

(1999)). *Also see Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (judge sitting alone may not determine the presence or absence of aggravating factors to impose death penalty); *Schriro v. Summerlin,* —— U.S. ——, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (*Ring* does not have retroactive application); and *see generally* Joshua A.T. Fairchild, *To Err is Human: The Judicial Conundrum of Curing Apprendi Error,* 55 Baylor L.Rev.889, esp. 919–20, 921–22, 931–32 (2003) ("Yet, at the same time, the chances that any of these sentences will actually be reversed under *Apprendi* is slim, even when the question is a matter of life and death.").

[¶ 11]   In 2002, the United States Supreme Court had occasion to further explain its holding in *Apprendi.* In *United States v. Cotton,* 535 U.S. 625, 630–632, 122 S.Ct. 1781, 1785–86, 152 L.Ed.2d 860 (2002), the Court restated its *Apprendi* holding. It then applied a plain error analysis to a conviction, and the sentence imposed incident to that conviction, where the indictment had failed to include drug quantity, where drug quantity increased the applicable maximum sentence, and defendants had made no objection at trial. The Court held that the error did not seriously affect the "fairness, integrity, or public reputation of judicial proceedings," where the pertinent evidence was "overwhelming" and "essentially uncontroverted." Thus, the convictions and sentences were upheld. Professor Fairchild makes this observation about a "continuum of certainty" in such cases:

.... Current applications of *Apprendi* and *Cotton* are best understood in terms of a continuum of certainty regarding the correct outcome of the case. At one end of the spectrum, courts have found cogent ways of explaining that in certain common types of appeals, no *Apprendi* violation actually occurred. Next along the continuum are cases in which a jury did not make a formal finding as to the omitted element of the crime, but the court is able, nonetheless, to discern that the jury in fact decided the issue. Similarly, courts affirm when a defendant's allocution to drug amounts in a plea hearing definitively settled the drug amount question. Finally

come the gray-area cases in which courts apply the rule of *Cotton* to weigh the evidence against a defendant and determine whether it was indeed overwhelming and uncontroverted.

Joshua A.T. Fairchild, *To Err is Human: The Judicial Conundrum of Curing Apprendi Error,* 55 Baylor L.Rev.889, 932 (2003).

[¶ 12]   It is also worthwhile to note here that the United States Supreme Court has held that *Apprendi* does not apply where the enhancer is, by terms of the applicable statute, a "sentencing factor" and not an "essential element of the crime," and applies so as to extend the minimum sentence but does not enlarge the applicable maximum sentence. *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002).

[¶ 13]   It seems clear that *Apprendi* and its progeny do not apply to the circumstances of this case, and we take note that we have previously responded to a similar argument and reached that conclusion:

Second, according to the United States Supreme Court,

[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

*Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *See also United States v. Sullivan,* 255 F.3d 1256, 1264–65 (10th Cir.2001), *cert. denied,* 534 U.S. 1166, 122 S.Ct. 1182, 152 L.Ed.2d 124 (2002) and *Joyner v. State,* 2002 WY 174, ¶ 19 n. 5, 58 P.3d 331, 337–38 n. 5 (Wyo.2002). In *Jaramillo v. City of Green River,* 719 P.2d 655, 659 (Wyo.1986), a case involving a city ordinance that enhanced the penalty for driving while under the influence based on prior convictions, we held:

The rule in Wyoming is that unless a statutory right exists to have the question of prior convictions submitted to the jury, such as that encompassed in the Wyoming habitual criminal statutes, §§ 6–10–201 through 6–10–203, W.S. 1977, the court rather than the jury can

determine the question of prior convictions. Jaramillo contends, however, that there is language in *State ex rel. Motor Vehicle Division v. Holtz*, Wyo., 674 P.2d 732 (1983) which subjects the submission of prior convictions for driving while under the influence of intoxicating liquor to the same requirements as the habitual criminal statute. The language upon which Jaramillo relies is:

" . . . [T]he statutory requirement that the sentence to be imposed by the court be more severe as the number of prior convictions of the defendant increases makes the [D.W.U.I.] statute a habitual criminal act. Before the sentence of a defendant can be enhanced under such act, he must have notice of the fact that such is contemplated. Generally, the notice must be contained in the information or charge under which he is prosecuted. *Evans v. State*, Wyo., 655 P.2d 1214 (1982). Section 6–10–203(a), W.S. 1977 (1983 Replacement), provides:

'(a) An information or indictment which charges a person as an habitual criminal shall set forth the charged felony and allege the previous convictions.'

"Although here we are not concerned with felonies, the reason upon which this section is predicated is pertinent to the requirement of similar notice in DWUI cases." *State ex rel. Motor Vehicle Division v. Holtz*, supra, at 738.

Jaramillo is mistaken in his contention that this language brings this question within the statutory requirement that the issue be submitted to a jury. In *State ex rel. Motor Vehicle Division v. Holtz*, supra, the court simply recognized that due process requires notice if a former conviction is to be used to enhance punishment. Certainly the Wyoming habitual criminal statutes do not by their terms encompass misdemeanor convictions for driving while under the influence of intoxicating liquor. There is no indication in *Holtz* that the court could or would expand those statutes to encompass these misdemeanor offenses. The ordinance of the City of Green River does not require a determination by the jury of the issue of prior convictions. We hold that with respect to such sentence enhancement proceedings under the state statute or a similar city ordinance, unless the statutory language so requires, a right to a jury trial with respect to the existence of prior convictions does not exist.

Unlike the habitual criminal statutes, Wyo. Stat. Ann. § 6–2–501(f)(ii) does not expressly provide for a jury determination with respect to the existence of prior convictions.

*Spinner v. State*, 2003 WY 106, ¶ 29, 75 P.3d 1016, ¶ 29 (Wyo.2003); *also see Thomas v. State*, 2003 WY 53, ¶ 20, n. 4, 67 P.3d 1199, ¶ 20, n. 4 (Wyo.2003); *Joyner v. State*, 2002 WY 174, ¶ 19, n. 5, 58 P.3d 331, ¶ 19, n. 5 (Wyo.2002); and *see generally* 3 David S. Rudstein, C. Peter Erlinder, and David C. Thomas, *Criminal Constitutional Law*, § 14.01, at 14–4 through 14–6 (2002).

[¶ 14] The courts of several other states have considered similar questions. In *People v. Martinez*, 32 P.3d 520, 529–30 (Colo.App. 2001) the Colorado Court of Appeals viewed *Apprendi* as having "blurred the distinction between elements of a crime and penalty enhancers," and that there had been considerable discussion of its scope in recent litigation (had been cited in over 730 published decisions at that point in time; a WESTLAW search indicates there are more than 1800 state cases applying *Apprendi* at this point in time). Nonetheless, the Colorado court concluded it was "uncertain whether *Apprendi* compels the conclusion that any such fact that may increase the maximum penalty *ipso facto* becomes an essential element" of the crime, and did not apply it to the circumstances of the *Martinez* case. In *Commonwealth v. Lepper*, 60 Mass.App.Ct. 36, 798 N.E.2d 1030, 1039–40 (Mass.App.Ct.2003), the court found no *Apprendi* violation where the defendant was adjudicated as "a common and notorious thief," because it was clear that the enhanced prison sentence imposed was based on nothing less than proof beyond a reasonable doubt (though not necessarily found by the jury), as well as because the sentence imposed was below the default statutory maximum applicable to the baseline

offense. *Id.,* at 798 N.E.2d 1040 (citing cases). In *State v. Elkins,* 2002–Ohio–2914, ¶¶ 15–22, 148 Ohio App.3d 370, 773 N.E.2d 593, ¶¶ 15–22 (Ohio App. 10 Dist.2002), the court held *Apprendi* did not apply because the jury found beyond a reasonable doubt that the defendant possessed 100 times the quantity of a drug, the mere possession of which constituted a third degree felony. In turn, the wording of the statute made the individual in possession of 100 times the amount of the drug a "major drug offender," which in turn authorized the trial court to impose an enhanced sentence.

■ [¶ 15] We view the existence of a prior conviction and the existence of a contemporaneous conviction as resting on the same quality of evidence and neither is required to be determined by a jury under the beyond a reasonable doubt standard, unless the applicable statute, by its wording, imposes such a requirement (e.g., the habitual criminal statute). Thus, in the "continuum of certainty" proposed by Professor Fairchild, we view a contemporaneous conviction as being on the same footing as a prior conviction. The principle articulated in *Apprendi* is not violated in any way.

### Application of *Lockyer* and *Ewing*

■ [¶ 16] Brown takes a stab at weaving the United States Supreme Court's decisions in *Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) and *Ewing v. California,* 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) into his argument. It suffices here to note that we recently resolved a case similar to Brown's in light of those decisions:

> Daniel challenges the imposition of two consecutive life sentences under the habitual criminal statute, Wyo. Stat. Ann. § 6–10–201 (LexisNexis 2003), on two grounds: first, that the statutory language does not permit more than one sentence enhancement, and second, that the imposition of two consecutive life sentences is cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.
>
> Since our decision in *Rich v. State,* 899 P.2d 1345 (Wyo.1995), the law has been settled that life sentences for a fourth and fifth felony are required under § 6–10–201, when a defendant is adjudicated a habitual criminal. *Id.* at 1347. *Rich* upheld the trial court's decision to impose three consecutive life sentences for first degree sexual assaults constituting distinct crimes. Daniel contends, however, that *Rich* is distinguishable from his convictions arising out of just one sexual assault occurrence. He contends that the disproportionate harshness of two consecutive sentences to life is demonstrated because he is ineligible for parole although this is his only violent felony conviction, and this disproportionality constitutes cruel and unusual punishment. The State contends that we have previously decided that the portion of the habitual criminal statute enhancing a sentence to ten to fifty years for two prior convictions is not cruel and unusual punishment under the Eighth Amendment and that reasoning applies to a sentence enhancement of life imprisonment, citing *Oakley v. State,* 715 P.2d 1374 (Wyo.1986).

> In *Oakley,* we considered the several decisions by the United States Supreme Court addressing when sentence enhancement constituted cruel and unusual punishment to arrive at our decision that § 6–10–201(b)(i) does not violate the Eighth Amendment. The Court recently reviewed this same jurisprudence in its latest consideration of this issue in connection with California's "three strikes law," statutory schemes that are "designed to increase the prison terms of repeat felons." *Ewing v. California,* 538 U.S. 11, 14, 123 S.Ct. 1179, 1182, 155 L.Ed.2d 108 (2003). Ewing had been convicted of felony grand theft in excess of $400 for stealing three golf clubs; however, because he had previously been convicted of three burglaries and a robbery, all considered serious or violent felonies, the three strikes law applied and Ewing was sentenced to 25 years to life. *Id.* at 1183–85.

> *Ewing* resulted in a majority decision that California's three strikes law constitutionally addresses recidivism without vio-

lating the Eighth Amendment ban of cruel and unusual punishment. *Id.* at 1190. However, the Court's analysis for arriving at that conclusion garnered only plurality support, and its application of those principles relied upon in *Ewing* are unclear enough to have caused the Court to reject the opinion that its case law was clear or consistent enough to be clearly established federal law within the meaning of 28 U.S.C. § 2254(d). *Lockyer v. Andrade*, 538 U.S. 63, 72, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003). The Court did find that it was clearly established that a gross disproportionality principle does apply to sentences for terms of years; however, the precise contours of that principle "are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* The Court held that *Lockyer* was not one of those exceedingly rare or extreme cases. *Id.*

Lockyer stole about $150.00 worth of videotapes and was convicted of two counts of petty theft. He had previously been convicted of three counts of residential burglary, which California's three strikes law considers "serious or violent" felonies, and which made him eligible for sentence enhancement. Lockyer received two consecutive sentences of twenty-five years to life imprisonment, although he will be eligible for parole in about fifty years. *Lockyer*, 538 U.S. at 64–68, 123 S.Ct. at 1169–71.

In both *Ewing* and *Lockyer*, the Court considered its previous decisions in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). *Rummel* held that the Eighth Amendment did not prohibit a state from sentencing a three-time offender to life in prison with the possibility of parole for the justified purpose of addressing recidivism. *Ewing*, 538 U.S. at 20, 123 S.Ct. at 1185. In another recidivism case, *Solem* found that a life sentence without possibility of parole for a seventh nonviolent felony was prohibited by the Eighth Amendment's proscription against sentences that are disproportionate to the crime committed.

*Ewing*, at 1186. *Harmelin* held that a life sentence without possibility of parole was not grossly disproportionate under the Eighth Amendment although the first time offender was convicted only of possessing 672 grams of cocaine and was not the subject of a recidivism statute. *Ewing*, at 1186. Based on this precedent, *Ewing* and *Lockyer* gleaned that its guiding principles for deciding whether a sentence of twenty-five years to life for stealing three golf clubs or videotapes required the threshold determination of whether the crime committed and the sentence imposed leads to an inference of gross disproportionality. *Ewing*, 538 U.S. at 25–29, 123 S.Ct. at 1188–90. Neither contention of an Eighth Amendment violation survived the Court's threshold determinations and both enhanced sentences were upheld. *Id.* at 1190; *Lockyer*, 538 U.S. at 75–76, 123 S.Ct. at 1175–76.

In considering this precedent as well as our own established in *Oakley* and *Rich* with respect to the facts of this case, we first find that, contrary to his assertions, Daniel has been convicted of two distinct sexual assaults permitting imposition of consecutive life sentences under the habitual criminal statute. We have said that "[i]n appeals alleging imposition of multiple sentences for a single act, the focus is on those facts proven at trial." *Chapman v. State*, 2001 WY 25, ¶ 25, 18 P.3d 1164, ¶ 25 (Wyo.2001) (citing *Rouse v. State*, 966 P.2d 967, 970 (Wyo.1998)). The ultimate question is whether those facts reveal a single criminal act or multiple distinct offenses against the victim. *Id.* Where the acts required for the commission of one offense are a necessary and indispensable precursor to commission of a second offense, the offenses merge for purposes of sentencing. *Id.* Such merger is mandatory where the second offense cannot be committed absent commission of the first offense. *Id.*

The evidence showed that Daniel subjected the victim to both vaginal and anal sexual penetration and these acts constitute separate, forcible sexual intrusions on the victim. *See* Wyo. Stat. Ann. § 6–2–302 (LexisNexis 2003). Proof of different facts

was required to establish the elements of each crime, creating a record showing that Daniel's convictions were for separate and distinct crimes. It was, therefore, appropriate for the district court to consider Daniel's convictions as separate and distinct crimes for the purpose of imposing consecutive life sentences pursuant to the habitual criminal statute.

Daniel's Eighth Amendment violation claim requires that we examine the gravity of the offense compared to the harshness of the penalty. Daniel's two first degree sexual assault convictions followed a history of felony convictions. Wyoming's habitual criminal statute is long-standing and serves to address recidivism by simply removing from society those members who have proved themselves incapable of conforming to the laws by virtue of multiple, previous felony convictions. Our review of Wyoming legislation indicates that the habitual criminal statute, § 6–10–201, is directed at repeat offenders of violent crimes and § 6–2–306 imposes a life sentence for those with two previous first degree sexual assault convictions. The sentence enhancement under the sexual assault statute does not apply to Daniel, but from this scheme, we see that the legislature enacted § 6–10–201 with the intent of removing from society those recidivists who continue to commit felonies and the legislature has further acted to incapacitate those recidivists with three first degree sexual assault convictions by imposing life sentences under § 6–2–306.

Daniel, a felony recidivist, now stands convicted of two violent felonies as defined by Wyo. Stat. Ann. § 6–1–104(a)(xii) (LexisNexis 2003), namely, first degree sexual assault, and, because of his criminal history, Daniel was properly subjected to a life sentence in furtherance of the legislative goal of halting recidivism. We hold that his two consecutive life sentences for his convictions is not a rare case where the crimes compared to the penalty are grossly disproportionate. No violation of the Eighth Amendment's ban against cruel and unusual punishment has occurred.

*Daniel v. State,* 2003 WY 132, ¶¶ 25–34, 78 P.3d 205, ¶¶ 25–34 (Wyo.2003) (footnotes omitted); *also see Heinemann v. State,* 12 P.3d 692, 697–700 (Wyo.2000).

[¶ 17] We conclude that, to the extent that *Lockyer* and *Ewing* have any application to the circumstances of Brown's case, the sentences imposed on Brown also fully satisfy those standards.

## Retroactive Application of the Above Cases

[¶ 18] Since the constitutional principles discussed above do not apply to Brown's case, we need not determine whether or not they might apply retroactively to Brown's sentences.

## CONCLUSION

[¶ 19] The order of the district court denying the motion to correct an illegal sentence is affirmed.