# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 157

### OCTOBER TERM, A.D. 2014

December 9, 2014

DAVID MICHAEL NORGAARD,

Appellant
(Defendant),

v.

S-14-0081

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
The Honorable Thomas W. Rumpke, Judge

*Representing Appellant:*
> Office of the Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Darrell D. Jackson, Faculty Director, and A. Walker Steinhage, Student Director, Prosecution Assistance Program. Argument by Mr. Steinhage.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Justice.**

[¶1] David Michael Norgaard claims he was subjected to cruel and/or unusual punishment in violation of the United States and Wyoming constitutions when he was sentenced to life in prison without the possibility of parole upon his second conviction for sexual abuse of a minor. We acknowledge the punishment is harsh, but, under the circumstances presented here, we find it is valid under both constitutions. Consequently, we affirm.

## ISSUES

[¶2] Mr. Norgaard presents the following issues on appeal:

> I. Is the sentence of life without the possibility of parole grossly disproportionate to the offense and therefore in violation of the Eighth Amendment of the United States Constitution?
>
> II. Does Appellant's sentence of life in prison without the possibility of parole violate Art. 1, § 14 of the Wyoming Constitution?

The State presents a single appellate issue:

> A criminal sentence violates the Eighth Amendment to the United States Constitution if the sentence is found to be cruel **and** unusual. A criminal sentence violates article 1, section 14 of the Wyoming Constitution if it is cruel **or** unusual. The district court sentenced Norgaard to a mandatory term of life in prison without the possibility of parole as mandated by Wyo. Stat. Ann. § 6-2-306(e). Did the district court commit plain error by imposing this sentence?

(Emphasis in original).

## FACTS

[¶3] Mr. Norgaard was charged with one count of first degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-314(a)(i) (LexisNexis 2013)[1] and one count of second

---

[1] Section 6-2-314 states in relevant part:

> (a) An actor commits the crime of sexual abuse of a minor in the first degree if:

1

degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-315(a)(ii) (LexisNexis 2013)[2] for events occurring on August 12, 2012. He was also charged with one count of second degree sexual abuse of a minor for an offense on August 5, 2012. All of the charges involved the same six-year old female victim.

[¶4]    Mr. Norgaard was previously convicted, while in the United States Army in 1997, of a similar offense. The State filed a notice of intent to introduce at trial evidence of the

---

> (i) Being sixteen (16) years of age or older, the actor inflicts sexual intrusion on a victim who is less than thirteen (13) years of age;
> . . . .
>
> (c) A person convicted under paragraph (a)(i) of this section, where the actor is at least twenty-one (21) years of age, is subject to imprisonment for not less than twenty-five (25) years nor more than fifty (50) years, unless the person convicted qualified under W.S. 6-2-306(e).

Sexual intrusion is defined at Wyo. Stat. Ann. § 6-2-301(a)(vii) as:

> (vii) "Sexual intrusion" means:
>
> (A) Any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse; or
>
> (B) Sexual intercourse, cunnilingus, fellatio, analingus or anal intercourse with or without emission.

[2] Section 6-2-315 states in relevant part:

> (a) Except under circumstance constituting sexual abuse of a minor in the first degree as defined by W.S. 6-2-314, an actor commits the crime of sexual abuse of a minor in the second degree if:
> . . . .
> (ii) Being sixteen (16) years of age or older, the actor engages in sexual contact of a victim who is less than thirteen (13) years of age;
> . . . .
> (b) A person convicted under subsection (a) of this section is subject to imprisonment for not more than twenty (20) years, unless the person convicted qualifies under W.S. 6-2-306(e).

Sexual contact is defined at § 6-2-301(a)(vi) as:

> (vi) "Sexual contact" means touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or of the clothing covering the immediate area of the victim's or actor's intimate parts[.]

prior conviction under W.R.E. 404(b).  The district court held a hearing and ruled the evidence was admissible.  Thereafter, the parties negotiated a plea agreement in which Mr. Norgaard agreed to plead no contest to the second count of the information, second degree sexual abuse committed on August 12, 2012, and the State agreed to dismiss the other two counts.  Mr. Norgaard specifically acknowledged in the plea agreement that the sentence for a second conviction of second degree sexual abuse of a minor was life in prison without the possibility of parole.

[¶5]    The district court ruled that probation was not appropriate in Mr. Norgaard's case and imposed the only prison term allowed under Wyo. Stat. Ann. §§ 6-2-315(b) and 6-2-306(e) (LexisNexis 2013)–life without the possibility of parole.  Mr. Norgaard appealed.  We will present additional facts in our discussion of the issues below.

## STANDARD OF REVIEW

[¶6]    The parties disagree on the pertinent standard of review.  Mr. Norgaard argues that the standard of review of the constitutional issue is *de novo.* The State argues that, because Mr. Norgaard failed to object to the sentence below, we are limited to a search for plain error.[3]

[¶7]    We understand the State's concern with Mr. Norgaard's failure to object or present his constitutional arguments below.  However, the salient question we must answer in this case is really no different if addressed under the plain error standard or a simple *de novo* standard.  To establish plain error, an appellant must demonstrate "that the record patently demonstrates the district court transgressed a clear and unequivocal rule of law and such violation adversely affected his substantial right." *Sandoval v. State,* 2009 WY 121, ¶ 6, 217 P.3d 393, 395 (Wyo. 2009), citing *Manes v. State,* 2004 WY 70, ¶ 9, 92 P.3d 289, 292 (Wyo. 2004).  Mr. Norgaard's sentence is clear in the record and a substantial right will certainly be adversely affected if his sentence of life without parole is found to be unconstitutionally cruel and unusual.  The only question to be resolved under the plain error standard is whether the sentence violates the constitutional

---

[3] Although the State does not argue that Mr. Norgaard waived his right to challenge his sentence as cruel and unusual by failing to raise the issue in the district court, there is precedent to that effect. *See Apodaca v. State,* 571 P.2d 603, 605 (Wyo. 1977) (issue of whether juvenile defendant was subjected to cruel and unusual punishment by being sentenced to the penitentiary was not addressed on appeal because it was not raised in the district court); *Bhutto v. State,* 2005 WY 78, ¶¶ 36-38, 114 P.3d 1252, 1265-66 (Wyo. 2005) (refusing to address issue of whether murder statute which allowed judge to choose between life imprisonment and life imprisonment without parole without any guidelines violated due process or was an unconstitutional arbitrary power because defendant did not raise it below); *United States v. Rivera,* 546 F.3d 245, 254 (2d. Cir. 2008) (defendant's claim on appeal that his sentence was cruel and unusual in violation of the Eighth Amendment forfeited because it was not raised in the district court).

provisions. Determination of that legal question is, of course, subject to *de novo* review.[4] *Sen v. State,* 2013 WY 47, ¶ 43, 301 P.3d 106, 122 (Wyo. 2013). Thus, we apply our *de novo* standard of review under the circumstances of this case.

## DISCUSSION

### *1. Eighth Amendment to the United States Constitution*

[¶8] The United States Constitution Amendment VIII states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The provision applies to the states by application of the due process clause of the Fourteenth Amendment to the United States Constitution. *Robinson v. California,* 370 U.S. 660, 675, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962). Under the Eighth Amendment barbaric punishments and sentences that are disproportionate to the crime are prohibited. *Solem v. Helm*, 463 U.S. 277, 284, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983); *Bear Cloud v. State,* 2013 WY 18, ¶ 18, 294 P.3d 36, 41 (Wyo. 2013). *But see Harmelin v. Michigan,* 501 U.S. 957, 966-75, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (two justices asserting that the Eighth Amendment was not intended to prohibit disproportionate punishments).

[¶9] In *Graham v. Florida,* 560 U.S. 48, 58-59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), the United States Supreme Court explained:

> To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to "'the evolving standards of decency that mark the progress of a maturing society.'" *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, [290,] 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, [598,] 2 L.Ed.2d 630 (1958) (plurality opinion)). "This is because '[t]he standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment. The standard itself remains the same, but its applicability must change as the basic mores of society change.' " *Kennedy v. Louisiana,* 554 U.S. 407, 419, 128 S.Ct. 2641, 2649, 171 L.Ed.2d 525, 538 (2008) (quoting *Furman v. Georgia,* 408 U.S. 238, 382, 92 S.Ct. 2726, [2800,] 33 L.Ed.2d 346 (1972) (Burger, C.J., dissenting)).
>
> The Cruel and Unusual Punishments Clause prohibits the imposition of inherently barbaric punishments under all

---

[4] Because we find no violation of the constitutional provisions, we do not need to determine whether the rule of law was clear and unequivocal.

circumstances. *See, e.g., Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). "[P]unishments of torture," for example, "are forbidden." *Wilkerson v. Utah,* 99 U.S. 130, 136, 25 L.Ed. 345 (1879). These cases underscore the essential principle that, under the Eighth Amendment, the State must respect the human attributes even of those who have committed serious crimes.

For the most part, however, the Court's precedents consider punishments challenged not as inherently barbaric but as disproportionate to the crime. The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544, [549,] 54 L.Ed. 793 (1910).

*See also Tucker v. State,* 2010 WY 162, ¶ 49, 245 P.3d 301, 314 (Wyo. 2010).

[¶10]  Mr. Norgaard maintains his punishment violates the Eighth Amendment because it is grossly disproportionate to the crime he committed.  He pleaded no contest to second degree sexual abuse of a minor under § 6-2-315 which generally carries a maximum penalty of twenty years in prison, but because he had a prior conviction for sexual abuse of a minor, he qualified for an enhanced penalty under § 6-2-306(e).  Section 6-2-306(e) states:

(e) An actor who is convicted of sexual abuse of a minor under W.S. 6-2-314 or 6-2-315 shall be punished by life imprisonment without parole if the actor has one (1) or more previous convictions for a violation of W.S. 6-2-302 through 6-2-304, 6-2-314 or 6-2-315, or a criminal statute containing the same or similar elements as the crimes defined by W.S. 6-2-302 through 6-2-304, 6-2-314 or 6-2-315, which convictions resulted from charges separately brought and which arose out of separate occurrences in this state or elsewhere and which convictions were for offenses committed after the actor reached the age of eighteen (18) years of age.

[¶11]  Wyoming follows the United States Supreme Court's test from *Solem* to determine whether a sentence is proportional. *Oakley v. State,* 715 P.2d 1374, 1376-77 (Wyo. 1986).  The *Solem* test includes three elements:

> [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Solem,* 463 U.S. at 292, 103 S. Ct. at 3011. We consider first whether the gravity of the offense and the harshness of the penalty are proportional. We apply the last two elements of the test only if we find the sentence is grossly disproportionate to the crime. *Oakley,* 715 P.2d at 1379; *Tucker,* ¶ 49, 245 P.3d at 314-15.

[¶12] The sentence applicable to repeat sex offenders under § 6-2-306(e) of life in prison without parole is indisputably severe. In fact, as Mr. Norgaard points out, aside from the death penalty, life in prison without the possibility of parole is the most severe punishment meted out by our legal system. *Graham,* 130 S. Ct. at 2027; *Harmelin,* 501 U.S. at 1001, 111 S. Ct. at 2680 (a sentence of life imprisonment without possibility of parole is "the second most severe penalty permitted by law"). However, given the specific criteria for qualifying prior convictions, the harsh sentence of § 6-2-306(e) will apply to a relatively small group of habitual and dangerous sex offenders.

[¶13] It is important to remember that repeat sex offenders are subject to a mandatory severe penalty under our penal code because they have a history of committing extraordinarily serious crimes. In his argument that the mandatory sentence is grossly disproportionate to his criminal offense, Mr. Norgaard focuses on the sexual contact element of second degree sexual assault, i.e., "touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or of the clothing covering the immediate area of the victim's or actor's intimate parts." § 6-2-301(a)(vi). He argues that such conduct, while criminal, should not expose a defendant to the second most severe penalty that exists in our penal system.

[¶14] In determining whether a sentence is grossly disproportionate under *Solem,* 463 U.S. at 295-97, 103 S. Ct. at 3012, the elements of an offense are not considered in a vacuum; instead, courts look at the defendant's actual criminal conduct. Given he entered a no contest plea, the prosecutor provided the factual basis for Mr. Norgaard's plea. The prosecutor stated that the six-year old victim and her family took a trip to Devil's Tower on August 11, 2012. When they returned home to Gillette, the victim's father invited Mr. Norgaard, who was a close family friend, over to their house. The children went to bed and the adults stayed outside having drinks. Later in the evening:

6

Mr. Norgaard left the [victim's] parents outside and went inside for what [the victim's mother] felt was an extended period of time. [The mother] needed to use the restroom so she also went inside.

[The mother] noticed [the victim's] door was open and noted that it would be unusual because [the victim] always closed her door to keep the cat out. [The mother] went into [the victim's] room and found her awake. [The victim] reported to [the mother] that Uncle Day had woken her up. Uncle Day is what the children called Mr. Norgaard.

[The mother] asked why Mr. Norgaard had been in her room and [the victim] reported that she couldn't tell. [The mother] asked again and [the victim] reported that Mr. Norgaard touched her butt crack. [The mother] asked if he had done anything else and [the victim] reported he kissed my pee-pee. [The mother] asked [the victim] what pee-pee meant and [the victim] told her the red part.

[The mother] informed [the father] of what [the victim] had told her and immediately took [the victim] to the hospital where a SANE [sexual assault nurse examiner] nurse performed a swab of her vaginal and anal area.

The DNA recovered from the swab was consistent with Mr. Norgaard. The victim also gave an account of the offense to a forensic interviewer. Mr. Norgaard agreed at the change of plea hearing that the State's evidence would establish the facts recited by the prosecutor.

[¶15] The prosecutor also described Mr. Norgaard's former offense, which he committed in 1997 when he was nineteen years old. Mr. Norgaard signed a stipulation of fact in that earlier proceeding and it is part of the record in the present case. The prosecutor summarized the stipulation of fact as: "Mr. Norgaard after attending a birthday party drank some beers with the parents, went into the bedroom of a minor child, four years of age, and performed cunnilingus on the child." Mr. Norgaard committed that offense while in the United States Army and was court-martialed and pleaded guilty to forcible sodomy of a child. Mr. Norgaard was sentenced to twelve months imprisonment, his military rank was reduced and he was dishonorably discharged.

[¶16] This Court and the United States Supreme Court have recognized that repeat offenses provide a legitimate basis for more severe penalties. *Heinemann v. State,* 12 P.3d 692, 699-700 (Wyo. 2000); *Rummel v. Estelle,* 445 U.S. 263, 276, 100 S. Ct. 1133,

7

1140, 63 L. Ed. 2d 382 (1980) (acknowledging in context of recidivist statutes that the government has an interest in punishing not only the current offense but "in dealing in a harsher manner" with repeat offenders). Mr. Norgaard argues, nevertheless, that the legislature's categorical determination that a second time sexual abuse offender is required to spend the rest of his life in prison without the possibility of parole is unconstitutional. Although he uses the term "categorical" in his argument, he makes no effort to conduct the comprehensive analysis used by the United States Supreme Court in such cases. A determination that categorical punishment is cruel and unusual requires an analysis of such factors as objective indicia of a national consensus on punishment; comparison of the culpability of the offenders in light of their crimes and characteristics along with the severity of the punishment; and the penological justification for the sentencing practice. *See, e.g.*, *Graham,* 560 U.S. 48, 130 S. Ct. 2011 (mandatory sentence of life in prison without parole for juveniles in non-homicide cases is unconstitutionally cruel and unusual); *Miller v. Alabama,* 567 U.S. ___, 132 S. Ct. 2455 (2012) (mandatory sentence of life in prison without parole for juvenile offenders in homicide cases is cruel and unusual punishment).

[¶17] Instead of conducting a complete categorical analysis under the Supreme Court's guidelines, Mr. Norgaard simply directs us to three cases where other states have declared recidivist sentences unconstitutional under the Eighth Amendment. In *State v. Davis,* 427 S.E.2d 754 (W.Va. 1993) (per curiam), the West Virginia Supreme Court determined that the appellant had been subjected to cruel and unusual punishment under that state's habitual criminal statute which provided that a third felony conviction resulted in life in prison. The court ruled the sentence was cruel and unusual given all of appellant's convictions were for non-violent crimes, including the most recent which involved breaking and entering into a non-dwelling building and stealing $10.00.

[¶18] *State v. Wilson,* 859 So.2d 957 (La. Ct. App. 2003) and *State v. Brooks,* 889 So.2d 1064 (La. Ct. App. 2004) were Louisiana court of appeals cases. Although Mr. Norgaard suggests these cases were decided on the basis of the Eighth Amendment, the defendants' sentences were actually declared excessive in violation of the Louisiana Constitution, which prohibits sentences that are cruel, excessive or unusual. LSA Const. art 1, § 20. The focus in *Wilson* was on the specific Louisiana constitutional language which prohibits excessive sentences and the Louisiana law that has developed around that language. Using that particular analysis, the court declared Wilson's sentence of life in prison under Louisiana's habitual offender statute excessive. Although Wilson's most recent conviction was for robbing a bank by demanding money while holding his hand in his pocket, his three prior convictions were for non-violent crimes, including two convictions for issuing worthless checks and one for possession of stolen property. The court noted that, while Wilson deserved serious punishment, life in prison was excessive taking into account that, at the time of the robbery, he was suffering from a host of personal and financial issues. *Wilson,* 859 S.2d at 964. The court conducted a similar

analysis in *Brooks,* 889 So.2d at 1070, when it declared a mandatory sentence of life in prison for possession of cocaine by a habitual offender to be excessive.

[¶19] The three cases cited by Mr. Norgaard are obviously distinguishable from the case at bar. The Louisiana cases interpreted a constitutional prohibition against excessive sentences and its attendant procedures which do not exist in Wyoming. Unlike the crimes at issue in *Davis, Wilson,* and *Brooks,* Mr. Norgaard's crimes were committed upon young children, the most vulnerable of victims, and involved very serious criminal conduct of performing oral sex upon four and six year old victims. Mr. Norgaard's repeat sexual offenses are the type of conduct § 6-2-306(e) was intended to address.

[¶20] In *Heinemann,* 12 P.3d at 699-700, we considered the constitutionality of Wyo. Stat. Ann. § 6-2-306(d)[5] which mandated a sentence of life in prison without parole for three convictions of listed sex offenses. We rejected Heinemann's claim that his sentence was disproportional to his crime, stating:

> In his final attack on his sentence, Heinemann contends that his life sentence is disproportional to the crimes of which he stands convicted. He claims that he was essentially sentenced to life for, assuming guilt in all cases, grabbing the breasts of two girls and engaging in a game of strip poker in a non-consensual fashion. In reality, Heinemann became qualified for a life sentence not by the offenses with which he was charged in Wyoming, but by the demonstrable fact that he is a sexual predator who is a habitual sex offender. The intent of the enhanced sentencing provision is to protect the public from individuals who have demonstrated that they are unwilling or unable to conform their conduct to the laws of this state. By his proven conduct, Heinemann has demonstrated, to our satisfaction, that he is a repeat sex offender, despite the failure of some of his attempts because of police interference or victim resistance. The need to protect

---

[5] The version of § 6-2-306(d) (2000) at issue in *Heinemann* stated in relevant part:

> (d) An actor who is convicted of sexual assault shall be punished by life imprisonment without parole if the actor has two (2) or more previous convictions for any of the following designated offenses, which convictions resulted from charges separately brought and which arose out of separate occurrences in this state or elsewhere: . . . [list of predicate offenses].

The former statute, therefore, provided for "three strikes" before the mandatory penalty of life imprisonment without parole would apply. Section 6-2-306 has been modified over the years and, in 2007, subsection (e) was added which provided a "two strike" rule for certain crimes.

society is patent, and no justification is presented to persuade this Court that it should refuse to invoke the enhanced sentencing statute until Heinemann succeeds in inflicting injury or worse in three more sexual assaults.

*Id.*

[¶21] We have discussed habitual criminal statutes and their enhanced penalties in other cases. In *Daniel v. State,* 2003 WY 132, 78 P.3d 205 (Wyo. 2003), this Court stated that the obvious intent of the legislature in adopting recidivist statutes was to remove "from society those recidivists who continue to commit felonies." *Id.,* ¶ 33, 78 P.3d at 216. In *Brown v. State,* 2004 WY 119, ¶¶ 16-17, 99 P.3d 489, 496-98 (Wyo. 2004), we relied upon *Daniel* to uphold Brown's challenge, as cruel and unusual, of his consecutive life sentences for contemporaneous convictions of four counts of second degree sexual assault. Brown's sentence passed constitutional muster even though he did not have a prior criminal history of sexual assaults. *Id.*

[¶22] Mr. Norgaard, like the defendants in our earlier cases, was not sentenced simply for a single offense. He was sentenced to spend the remainder of his life in prison because he is unwilling or unable to conform to society's mores against using children for sexual gratification. Mr. Norgaard committed both of his crimes as an adult, although the crimes were fifteen years apart. He argues that he was never given the opportunity to reform as his court-martial sentence did not include treatment or rehabilitation. While that was unfortunate, we also recognize that Mr. Norgaard could have, and should have, obtained counseling and treatment on his own to deal with his unacceptable proclivities. He obviously knew his conduct was criminal and morally wrong as he had previously been convicted of a similar offense and apparently told his six year old victim in this case not to tell. Mr. Norgaard's sentence was not grossly disproportionate to his crime, and under our precedent, it is unnecessary to consider the other *Solem* factors to conclude the sentence did not violate the Eighth Amendment to the United States Constitution. *See Oakley* and *Tucker, supra.*

## 2. *Wyoming Constitution, Art. 1, § 14*

[¶23] Wyoming Constitution, Art. 1, § 14 states in relevant part: "Excessive bail shall not be required, nor excessive fines imposed, nor shall cruel or unusual punishment be inflicted." Mr. Norgaard argues the state constitution provides greater protection than the federal provision because it is phrased in the disjunctive, cruel **or** unusual, instead of the conjunctive used in the Eighth Amendment, cruel **and** unusual. He claims, therefore, that he is only required to show that the sentence was either cruel or unusual before he is entitled to relief and focuses his argument on the unusual element.

10

[¶24] The United States Constitution provides minimum requirements for constitutional protections and states are required to ensure their laws do not provide less protection than the federal requirements. *Pierce v. State,* 2007 WY 182, ¶ 13, 171 P.3d 525, 530 (Wyo. 2007); *O'Boyle v. State,* 2005 WY 83, ¶ 23, 117 P.3d 401, 408 (Wyo. 2005). A state constitution can, however, provide greater protection than its federal counterpart. *O'Boyle,* ¶ 23, 117 P.3d at 408.

[¶25] Mr. Norgaard asserts this Court has recognized greater protection under Art. 1, § 14 than the Eighth Amendment by considering the terms "cruel" and "unusual" separately. Although it is true that the wording of the federal and state provisions is different, we have never conducted a comprehensive analysis to determine precisely how that difference equates to greater protection. The cases often cited by litigants for the proposition that the "cruel or unusual" language provides greater protection than the Eighth Amendment do not, in fact, say that. *See Johnson v. State,* 2003 WY 9, ¶¶ 35-37, 61 P.3d 1234, 1249 (Wyo. 2003); *Sampsell v. State,* 2001 WY 12, ¶¶ 10-11, 17 P.3d 724, 727-28 (Wyo. 2001). In fact, the *Sampsell* case discusses the term "unusual" in reference to the Eighth Amendment and cases interpreting it, and does not even mention the Wyoming constitutional provision. In *Johnson,* ¶¶ 35-37, 61 P.3d at 1249, we performed a cursory analysis of the individual terms; however, we did not determine, practically, how that equates to greater protection. More recently, we pointed out in *Bear Cloud v. State,* 2014 WY 113, ¶ 144, 334 P.3d 132, 137 (Wyo. 2014), that it is not enough for a proponent of a different interpretation of the Wyoming constitutional provision prohibiting cruel or unusual punishment to point out that the language is different from the federal language. *See also Duran v. State,* 363 S.W.3d 719 (Tex. Ct. App. 2011) (interpreting Texas constitutional prohibition against "cruel or unusual punishments" to be identical to the Eighth Amendment "cruel and unusual" language).

[¶26] "Recourse to our state constitution as an independent source for recognizing and protecting the individual rights of our citizens must spring not from pure intuition, but from a process that is at once articulable, reasonable and reasoned." *Saldana v. State,* 846 P.2d 604, 622 (Wyo. 1993) (Golden, J., concurring). The analysis required to establish greater protection under the state constitution involves a systematic review of applicable criteria, which may include the six non-exclusive neutral criteria recognized in *Saldana,* 846 P.2d at 622: "1) the textual language of the provisions; 2) differences in the texts; 3) constitutional history; 4) preexisting state law; 5) structural differences; and 6) matters of particular state or local concern." *O'Boyle,* ¶ 24, 117 P.3d at 408-09. Although analysis of each criterion may not be necessary or helpful in any particular instance, Mr. Norgaard makes no attempt to conduct any such analysis in this case.

[¶27] Nevertheless, we will follow the example set out in *Johnson* and conduct a simple investigation into whether Mr. Norgaard's sentence was unusual in constitutional terms.[6] Mr. Norgaard begins his argument that his sentence was unconstitutionally unusual with the proposition that repeat sex offenders are the only persons in Wyoming subject to a mandatory sentence of life in prison without parole. Mr. Norgaard correctly states that even murderers have the chance of being granted a sentence of life in prison while retaining the eventual possibility of being paroled. The penalties for first degree murder include death, life imprisonment without parole, or life imprisonment. Wyo. Stat. Ann. § 6-2-101 (LexisNexis 2013). It is, however, difficult to compare the two sentencing schemes because murderers are subject to both a more severe penalty than repeat sex offenders—death, and a less severe penalty—life imprisonment with possibility of parole.

[¶28] In addition, as the Oregon Supreme Court pointed out when faced with a similar argument in *State v. Wheeler,* 175 P.3d 438, 453 (Or. 2007) (en banc), the crimes and the reasoning behind the attendant punishments are different. Wheeler claimed that a presumptive sentence of life in prison without the possibility of parole was disproportionate to his sex crimes because a murderer could possibly be released after serving a twenty-five year minimum term. *Id.* The court aptly stated: "[t]hat argument, of course, ignores the fact that [the Oregon statute] is a recidivism statute that applies to the defendant only because he has two prior felony convictions for sex crimes." The fact that a murderer with no prior conviction could be subject to a less severe presumptive sentence than a repeat felony sex offender did not make the recidivism statute disproportionate. *Id.* Moreover, a sentencing scheme that makes a sentence mandatory, without providing the sentencing court with discretion, is not necessarily unconstitutionally unusual. As the United States Supreme Court recognized in *Harmelin,* 501 U.S. 957, 994-95, 111 S. Ct. 2680 "[s]evere, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history."[7]

[¶29] Mr. Norgaard maintains that the evolving standards of decency in a maturing society may prohibit punishment that was once acceptable. *See Trop,* 356 U.S. at 101, 78 S. Ct. at 598; *Graham,* 560 U.S. at 58-59, 130 S. Ct. at 2020. He does not, however, provide any authority to demonstrate that the evolving standards of decency demand that he, as a repeat child sex abuser, should be accorded a less severe sentence or the right to eventual parole. Indeed, an argument can be made that society has, in recent years,

---

[6] We recognize that the argument propounded by Mr. Norgaard and our analysis includes elements similar to elements two and three of the *Solem* test for proportionality. *See* ¶ 11, *supra.*

[7] This is an interesting statement in light of Mr. Norgaard's argument that, in order to be considered unconstitutional in Wyoming, a sentence has only to be shown to be either cruel or unusual and his focus is on the "unusual" term. Although we make no ruling on this matter, it would seem, under this precedent, it would be easier to show that a sentence is cruel than to show it is unusual.

evolved to demand greater protection for the victims and potential victims of sexual predators.

[¶30] The American criminal justice system has two general objectives—to punish wrongdoers and prevent future harm. Within each of these objectives are more specific goals like rehabilitation of offenders, etc. *See Prevention versus Punishment: Toward a Principled Distinction in the Restraint of Released Sex Offenders,* 109 Harv. L. Rev. 1711 (1996) [hereinafter referred to as *Prevention versus Punishment*]. *See also Graham,* 560 U.S. at 71-74, 130 S. Ct. at 2028 (listing the penalogical goals of retribution, deterrence, incapacitation and rehabilitation in the context of a categorical challenge to a sentencing scheme under the Eighth Amendment). In response to these objectives, many states and the federal government have enacted enhanced punishments for repeat sex offenders and laws aimed at deterring recidivism by released offenders, including requirements for registration with local authorities after release from custody. *See* K. Pogue, *Crimes; Sentence Enhancement – Sex Offenses: One Strike You're Out,"* 26 Pac.L.J. 240 (1995) (reviewing California enhanced punishment laws); Wyo. Stat. Ann. § 7-19-302 (LexisNexis 2013) (mandating registration of sex offenders in Wyoming); *Prevention versus Punishment* at 1711 (reviewing the trend of jurisdictions requiring registration and other forms of notification and identification after release from custody). The Oregon Supreme Court noted in *Wheeler,* 175 P.3d at 453, that the legislature could legitimately choose to punish serial sex offenders more harshly than repeat offenders of other crimes "because sex crime victims often are young and vulnerable to adult coercion, because of the possibility of recidivism by sex offenders, or because of the severity of the impact of such crimes on the victims." *See also State v. Brim,* 789 N.W.2d 80, 88 (S.D. 2010) (stating a harsh sentence was appropriate for the defendant's convictions for child sex crimes because of the high likelihood of recidivism).

[¶31] Although we have not conducted a comprehensive review of all jurisdictions within the United States, a brief survey of various state laws confirms that Wyoming is certainly not alone in mandating very severe punishments for repeat sex offenders. Our neighbor to the north, Montana, has a statutory scheme similar to Wyoming. It mandates a sentence of life in prison without parole for a second offense of sexual intercourse without consent and/or sexual abuse of children. Mont. Code Ann. § 46–18–219. In *State v. Webb,* 106 P.3d 521, 529-30 (Mont. 2005), the Montana Supreme Court ruled that the fact the defendant would never be eligible for parole even if he rehabilitated himself did not render the sentence cruel and unusual.

[¶32] Similarly, South Carolina law requires that upon a second conviction of a "most serious crime," which includes any degree of criminal sexual conduct with minors, a defendant must be sentenced to life imprisonment without parole. *State v. Sosbee,* 637 S.E.2d 571, 573, n.2 (S.C. Ct. App. 2006), citing S.C.Code Ann. § 17-25-45(A), (B) (2003 & Supp. 2005). Oklahoma punishes a second conviction of sexual abuse of a minor with a sentence of "life without parole." 21 Okla. Stat. Ann. § 51.1a. In *Wheeler,*

175 P.3d at 452-54, the Oregon Supreme Court upheld the constitutionality of a statute which prescribed a presumptive sentence of life imprisonment without the possibility of parole when a defendant was convicted of a felony sex crime after having been previously convicted at least two times for felony sex crimes. In *Duran,* 363 S.W.3d at 724, a Texas court of appeals held that a mandatory life sentence for a repeat sexual offender did not violate either the Eighth Amendment or the Texas Constitution.

[¶33] Florida actually has more severe penalties than Wyoming because it mandates a sentence of life in prison without possibility of parole for a first offense of sexual battery upon a child. Fla. Stat. Ann. §§ 794.011 and 775.082(1) (1999). Florida courts have upheld the sentencing scheme in the face of constitutional challenges under the Eighth Amendment and the Florida Constitution. *See Jones v. State,* 861 So.2d 1261 (Fla. Ct. App. 2003); *Adaway v. State,* 864 So.2d 36 (Fla. Ct. App. 2003). Similarly, in *State v. Bartlett,* 571 S.E.2d 28 (N.C. Ct. App. 2002), a North Carolina court of appeals upheld a sentence of life in prison for a defendant's conviction of three counts of first degree sexual offense against his children even though he was a first time offender.

[¶34] As this brief survey demonstrates, Wyoming's statute is more severe than some states and less severe than others. It cannot, therefore, be considered constitutionally unusual.

[¶35] Affirmed.

14