# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 130

### OCTOBER TERM, A.D. 2022

October 25, 2022

DANIEL IVAN VILLAFANA,

Appellant
(Defendant),

v.

S-22-0049

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
The Honorable Catherine R. Rogers, Judge

*Representing Appellant:*

Mary (Katye) Ames, Woodhouse Roden Ames & Brennan, LLC, Cheyenne, Wyoming.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames*, Senior Assistant Attorney General; Kristen R. Jones, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

\* An order Allowing Withdrawal of Counsel was entered on August 1, 2022.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Daniel Ivan Villafana pleaded guilty to two counts of second-degree sexual abuse of a minor, KK.  The district court imposed two consecutive terms of 5-7 years in prison.  Mr. Villafana argues the court abused its discretion at sentencing by (1) refusing to hear argument and testimony that KK's parents condoned his sexual abuse of their daughter and financially extorted him after learning of the abuse; and (2) imposing consecutive sentences of imprisonment rather than probation.  He also claims his sentences constitute cruel or unusual punishment in violation of the Wyoming Constitution.  We affirm.

## ISSUES

[¶2]    Mr. Villafana raises three issues, which we restate as:

1.    Did the district court abuse its discretion at sentencing by refusing to hear argument and testimony that KK's parents condoned Mr. Villavana's sexual abuse of their daughter and financially extorted him after learning of the abuse?

2.    Did the district court abuse its discretion by sentencing Mr. Villafana to consecutive terms of imprisonment rather than probation?

3.    Do Mr. Villafana's sentences constitute cruel or unusual punishment under Article 1, § 14 of the Wyoming Constitution?

## FACTS

[¶3]    In 2016, Mr. Villafana formed a business with KK's father (Father) and Shamar Pigg.  In December 2017, Mr. Villafana began having sexual intercourse with KK.  At that time, KK was 14 years-old and Mr. Villafana was 27 years-old.  They continued to have a sexual relationship until December 2018, when KK learned she was pregnant and told her parents about the abuse.  Father immediately reported the abuse to law enforcement.  Mr. Villafana admitted to the police he had sexual intercourse with KK on at least ten occasions over the course of a year.  KK reported they had sex numerous times, including in Mr. Villafana's car, at his home, and in a hotel.

[¶4]    The State charged Mr. Villafana with seven counts of second-degree sexual abuse of a minor in violation of Wyo. Stat. Ann. § 6-2-315(a)(i) (LexisNexis 2021).  The parties eventually reached a plea agreement.  In exchange for Mr. Villafana agreeing to plead guilty to two of the counts, the State agreed to dismiss the other five counts and to recommend two concurrent sentences of 15-20 years imprisonment.  Mr. Villafana was "free to argue for the sentence he deem[ed] appropriate, including probation."  The court accepted Mr. Villafana's guilty pleas.

1

[¶5]   Prior to sentencing, Mr. Villafana retained Dr. Amanda Turlington, a clinical psychologist, to perform a psychosexual evaluation.  During the examination, Mr. Villafana told Dr. Turlington he was close to Father and his family, including KK, and spent most of his time with them.  He said Father "always had [him] deal with [KK]" because he "could relate to her" as he was closer in age to KK.  He claimed people told him and Father they thought KK was Mr. Villafana's wife.  Father would laugh and say KK "looked old enough to be [Mr. Villafana's] wife."  According to Mr. Villafana, KK's parents allowed KK to call him "whenever she wanted to" and he began picking KK up from school.  He claimed that as time passed, KK's parents "pushed [KK] on [him] more and more[.]"

[¶6]   Mr. Villafana described several instances where KK's parents "would just drop [KK] off at [his] house" and tell him she "needed to stay the night" because they were going out drinking.  On one of those occasions, KK went into Mr. Villafana's bedroom after he had gone to bed and they had sexual intercourse.  Contrary to KK's parents' report that they did not learn of the abuse until KK told them she was pregnant, Mr. Villafana informed Dr. Turlington that he told Father he had sex with KK but "[n]othing changed. [KK] still called [him] all the time.  Her parents still dropped her off at [his] house.  They still had [him] come over all the time."  Seven months after Mr. Villafana and KK first had sexual intercourse, "[KK] came into [his] room again, after [he] had gone to sleep, and had sex with [him]."  Mr. Villafana told Dr. Turlington that after Father learned of the abuse, Father required him to buy various items for KK in exchange for Father not reporting the abuse to law enforcement.  After paying over $20,000 to Father over a two year period, Mr. Villafana claimed he stopped paying Father and turned himself into the police.

[¶7]   Dr. Turlington concluded Mr. Villafana was a "Below Average Risk" for sexual recidivism and "Low Risk" for future violent criminal behavior.  She also determined he did not meet any of the criteria for a mental health diagnosis, including pedophilia.  She "predicted" that placing Mr. Villafana in prison or in group therapy with higher-risk individuals would increase his risk to reoffend.

[¶8]   A probation agent prepared a Presentence Investigation Report (PSIR).  The agent concluded probation was not an appropriate sentence.  Although it was Mr. Villafana's first offense, the agent determined he was a risk to the community due to the nature of the offense, in particular, KK's young age and the duration of the abuse.  She also noted Mr. Villafana had scored as an "Average Risk" for reoffending on the Sex-Offender Static-99R Risk Assessment, took minimal responsibility for his actions, blamed KK for his legal issues, and had not taken full advantage of sex offender treatment.

[¶9]   At the sentencing hearing, Dr. Turlington offered her conclusions and opined Mr. Villafana would "do very well with community supervision."  Mr. Pigg, Mr. Villafana's former business partner, testified he, Mr. Villafana, Father, and their families did "a lot of stuff together."  He claimed that in 2016 or 2017, KK had sexual relations with an adult

man (not Mr. Villafana) and Father knew about it. The State objected to this testimony as irrelevant. The district court sustained the State's objection, explaining:

> I concur wholeheartedly with the State, [Counsel]. This is about whether your client, and he's now convicted of doing this—your client had sex with a teenage girl. This [is] about how he's punished for that, this is about how he's sentenced for that. Blaming the victim, creating a situation in which the victim is looked at as some sort of seductress or an instigator, a child, that's wholly inappropriate and completely out of the context for a sentencing proceeding. If you want this individual to speak on behalf of your client and in support of your client, I will hear that, but I will not condone a presentation by the defense that paints the type of picture of this victim and this victim's family that it would appear you're attempting to paint.

Defense counsel claimed she was not "victim blaming" but rather providing "information regarding the relationship, how we got to this point. Those are mitigating factors . . . ." The court responded, "No, they're not."

[¶10] Defense counsel then asked the court whether it was appropriate to ask Mr. Pigg about KK's parents' financial extortion of Mr. Villafana as it "[had] been brought up multiple times" and she believed it was relevant. The court again disagreed, stating: "What may have happened after your client sexually abused this child is not material to the manner in which he should be sentenced for his conduct. It is not material to the considerations the court must focus on. Retribution, rehabilitation, deterrents, those are the things the Court focuses on, not whether after your client sexually abused this child somebody extorted him."

[¶11] Thereafter, defense counsel elicited testimony from Mr. Pigg, the business partner of Mr. Villafana and KK's father. Mr. Pigg vouched for Mr. Villafana's character and stated he did not have "any concerns about Mr. Villafana being in the community." Defense counsel then made a proffer for the record, stating she would have asked "Mr. Pigg questions about his observations about comments the parents made about [Mr. Villafana's] relationship with the child. I think they are mitigating factors, indicate whether or not the family was accepting or condone[d] the relationship prior to it happening." The court stated:

> [C]ertainly you've incorporated that into the record – the documents that I've read in preparation for sentencing are replete with those suggestions. I mean, it's all in there between the presentence investigation report and Dr. Turlington's

3

report. There's no question in my mind that Mr. Villafana believes that the conduct of the parents . . . did lead him and would have led any reasonable individual potentially to conclude that somehow his sexual relationship with their daughter was okay with them. That doesn't make it not criminal, it doesn't make it [not] a felony, and because of that it's not material to the Court's considerations in sentencing. So while I appreciate your desire, [Counsel], it will not be allowed.

[¶12] During her sentencing argument, defense counsel began by emphasizing that Mr. Villafana was not blaming KK for his actions and KK was "unquestionably the victim here." However, she claimed KK's parents "would often push their 15-year-old daughter onto Mr. Villafana[.]" At this point, the State objected, claiming the parents' conduct was not a mitigating circumstance. Defense counsel stated the conduct was "important to understand the history." The court overruled the State's objection and allowed defense counsel's argument for the purposes of providing context.

[¶13] Defense counsel then reiterated what Mr. Villafana reported to Dr. Turlington, including that KK's parents had him "deal with" KK because he was closer in age, they laughed when people said KK looked like Mr. Villafana's wife and agreed that KK looked old enough to be his wife, and they dropped her off at his house late at night so they could party. She also reported how the parents financially extorted him after learning of the abuse. Defense counsel emphasized that Mr. Villafana was not a pedophile or violent predator, had taken responsibility for his actions, had no criminal history, had performed "exemplary" on bond, and had a below average risk of reoffending. She maintained his abuse of KK was a "one-off situation" and he was not a threat to the community. She argued a sentence of ten years of supervised probation would be a fair and appropriate sentence.

[¶14] Consistent with the plea agreement, the State argued for two concurrent sentences of 15-20 years imprisonment. It claimed probation was not an appropriate sentence because, although Mr. Villafana did not have a criminal history, "there is no question that the sexual abuse happened, it happened repeatedly, it happened for a prolonged period of time. There was a great amount of deception that went into [his] conduct and . . . it profoundly harmed the victim in terms of her mental health. And it profoundly harmed the parent-child relationship between KK and [her parents]."

[¶15] The district court agreed with the State that probation was not an appropriate sentence under the circumstances. It rejected Mr. Villafana's argument that the offense was a singular incident (i.e., a "one-off situation") because, by pleading guilty to two counts, he admitted there were at least two incidents of sexual abuse and they extended over a period of months, if not years. While the court did not "view [Mr. Villafana] as a

4

predator," it did consider him to be an "opportunist[]" who, when given "sexual access to a vulnerable child," did not do "what an appropriate and responsible adult in this community should do[,]" but instead "took advantage of [the situation,] . . . had sex with a child [and] got that child pregnant." Although the court determined Mr. Villafana did not "need much rehabilitation in the sex offender realm" and was not a "significant threat" to the community, it concluded a sentence of imprisonment was necessary to adequately "punish" Mr. Villafana and to act as a sufficient deterrent to him and the community. The court was also "not convinced" Mr. Villafana fully understood that he "did something wrong." The court sentenced him to 5-7 years imprisonment on each count and ordered the sentences to run consecutively. This timely appeal followed.

## DISCUSSION

### *Refusal to Allow Argument and Evidence at Sentencing*

[¶16] Mr. Villafana argues the district court abused its discretion at sentencing by refusing to hear argument and evidence that KK had previously engaged in sexual relationships with adult men, her parents knew about these relationships, and they nevertheless encouraged, normalized, and sometimes even forced an inappropriate relationship between her and Mr. Villafana. He maintains he did not offer this argument and evidence to blame KK for his actions; indeed, he acknowledged, and continues to acknowledge, that KK was the victim and carried no fault. Rather, he claims these facts were relevant to provide context as to how and why he acted as he did even though he is not a violent predator or pedophile, which, in turn, was directly relevant to what threat, if any, he posed to society and his propensity to reoffend. Mr. Villafana also claims the court abused its discretion by prohibiting him from offering argument and evidence that "once the sexual relationship [between [KK] and Mr. Villafana] predictably occurred, her parents used [it] to extort hundreds of thousands of dollars from [him]." He maintains this information "provides context as to the motives behind why KK's parents forced and encouraged this relationship between an adult and their child[.]"

[¶17] Our standard for reviewing sentences is clear:

> When a criminal sentence is within the parameters set by the legislature, as it is here, that sentence will not be overturned on appeal absent a clear abuse of discretion. *Dodge v. State*, 951 P.2d 383, 385 (Wyo. 1997). An abuse of discretion does not occur unless a court has acted in a manner which exceeds the bounds of reason under the circumstances. *Vaughn v. State*, 962 P.2d 149, 152 (Wyo. 1998). The ultimate issue is whether or not the court could have reasonably concluded as it did. *Id*. In evaluating the reasonableness of a criminal sentence, we give consideration to the crime and its

circumstances along with the character of the defendant.
*Dodge*, 951 P.2d at 385.

*Suval v. State*, 6 P.3d 1272, 1274 (Wyo. 2000). Similarly, "'[a] sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.'" *Harada v. State*, 2016 WY 19, ¶ 13, 368 P.3d 275, 280 (Wyo. 2016) (quoting *Croy v. State*, 2014 WY 111, ¶ 6, 334 P.3d 564, 567 (Wyo. 2014), and *Magnus v. State*, 2013 WY 13, ¶ 24, 293 P.3d 459, 467-68 (Wyo. 2013)) (other citations omitted). *Cf. Baker v. State*, 2022 WY 106, ¶ 12, 516 P.3d 479, 482 (Wyo. 2022) ("'A trial court's rulings on the admissibility of evidence are entitled to considerable deference, and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal. The appellant bears the burden of showing an abuse of discretion.'" (quoting *Putnam v. State*, 2020 WY 133, ¶ 29, 474 P.3d 613, 621-22 (Wyo. 2020), and *Swett v. State*, 2018 WY 144, ¶ 11, 431 P.3d 1135, 1140 (Wyo. 2018))) (other citations omitted).

[¶18]  Mr. Villafana argues the district court abused its discretion by refusing to allow him to present argument <u>and</u> evidence that KK's parents condoned his sexual abuse of their daughter and financially extorted him. He maintains the parents' conduct was relevant to provide context as to how and why he acted as he did. However, the court allowed Mr. Villafana, over the State's objection, to present argument at sentencing about the parents' conduct to provide context. The district court also noted it was aware of the parents' conduct because both the PSIR and Dr. Turlington's report were "replete" with Mr. Villafana's claims that KK's parents encouraged and condoned his sexual abuse of KK and then used the abuse for financial gain. Moreover, this information was provided at sentencing through the State's cross-examination of Dr. Turlington. Nevertheless, the district court did not abuse its discretion by prohibiting Mr. Villafana from eliciting testimony concerning the parents' conduct because their conduct was not a mitigating circumstance or otherwise relevant to sentencing.

[¶19] A court, in exercising its judicial discretion at sentencing, "'should give consideration to all circumstances—aggravating as well as mitigating.'" *Noel v. State*, 2014 WY 30, ¶ 42, 319 P.3d 134, 147 (Wyo. 2014) (quoting *Cavanagh v. State*, 505 P.2d 311, 312 (Wyo. 1973)). "A 'mitigating circumstance'" is "[a] fact or situation that does not justify or excuse a wrongful act or offense but that reduces the degree of culpability and thus may reduce . . . the punishment (in a criminal case)." *Circumstance*, Black's Law Dictionary (11th ed. 2019).

[¶20] The fact that KK's parents condoned and encouraged Mr. Villafana to sexually abuse their daughter and then used that abuse to extort money from him is not a mitigating circumstance. Although Mr. Villafana insists he is not blaming KK for his actions, he is blaming her parents. He is essentially arguing that because KK's parents condoned the

6

sexual abuse and used it for financial gain, he is somehow less culpable for the abuse. However, as the district court aptly explained, KK's parents' allegedly improper actions do not make <u>his</u> actions "not criminal" or otherwise reduce his culpability. If anything, by deflecting blame, Mr. Villafana is not taking full responsibility for the wrongfulness of his behavior, an aggravating circumstance. *See Circumstance*, Black's Law Dictionary (11th ed. 2019) (defining "aggravating circumstance" as "[a] fact or situation that increases the degree of liability or culpability for a criminal act").

[¶21] Moreover, the fact that KK's parents condoned the sexual abuse and thereafter financially extorted Mr. Villafana is not relevant to any of the purposes of sentencing. "[I]t is generally recognized that a sentence is imposed for one or more of four purposes: (1) rehabilitation, (2) punishment (specific deterrence and retribution), (3) example to others (general deterrence), and (4) removal from society (incapacitation or protection of the public)." *Cohee v. State*, 2005 WY 50, ¶ 20, 110 P.3d 267, 274 (Wyo. 2005) (quoting *Wright v. State*, 670 P.2d 1090, 1092-93 (Wyo. 1983)) (emphasis omitted). Although the Wyoming Rules of Evidence (W.R.E.) do not apply at sentencing, *see* W.R.E. 1101(b)(3), the definition of relevance contained in the rules is instructive. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. As we explained above, KK's parents' actions in this case do not decrease Mr. Villafana's criminal culpability and therefore are unrelated to the severity of the sentence appropriate to sufficiently punish Mr. Villafana. Nor do the parents' actions have "any tendency" to reveal whether or not Mr. Villafana is a threat to society or likely to reoffend. As a result, they are not relevant to the level of punishment needed to deter Mr. Villafana or others from committing similar crimes in the future or to the determination of whether he needs rehabilitation or to be removed from the community.

[¶22] The district court reasonably concluded KK's parents' actions in this case were not a mitigating circumstance or otherwise relevant to sentencing. The court did not abuse its discretion by prohibiting Mr. Villafana from presenting evidence concerning their actions at sentencing.

### *Consecutive Sentences*

[¶23] Mr. Villafana argues the district court abused its discretion by sentencing him to consecutive terms of imprisonment rather than to probation. He acknowledges his sentences are lawful under § 6-2-315(b), which imposes a 20-year maximum sentence of imprisonment for those convicted of second-degree sexual abuse of a minor. He claims, however, his sentences are unreasonable given the "unique situation" present in this case. Again, he emphasizes KK's parents knew about and encouraged his relationship with KK, at least until she became pregnant, and then exploited him for financial gain. He notes Dr. Turlington determined he was not a violent predator or pedophile, was a good candidate for probation, and imprisonment would increase his risk of reoffending. He also claims he

accepted responsibility for his crimes by voluntarily confessing and pleading guilty, has no criminal history, and performed well while on bond.

[¶24] "The decision whether or not to grant probation is discretionary." *Monjaras v. State*, 2006 WY 71, ¶ 11, 136 P.3d 162, 164 (Wyo. 2006) (citing *Trujillo v. State*, 2002 WY 56, ¶ 6, 44 P.3d 943, 945 (Wyo. 2002)). "While the trial court is not obligated to grant probation to a criminal defendant, it must consider an application for probation and, if such is not granted, include a statement in the written sentence expressly acknowledging that it considered the application." *Id.* (citing *Martinez v. State*, 2002 WY 10, ¶ 10, 39 P.3d 394, 396 (Wyo. 2002) and W.R.Cr.P. 32(c)(2)(D)). "[N]o particular amount of consideration of probation is required as long as the record discloses that the court considered it, however slightly." *Id.*, ¶ 11, 136 P.3d at 164-65 (citing *Beaulieu v. State*, 608 P.2d 275 (Wyo. 1980)) (other citations omitted).

[¶25] A "'district court [also] has discretion in determining whether the sentences will be served consecutively or concurrently.'" *Baker v. State*, 2011 WY 123, ¶ 14, 260 P.3d 268, 272 (Wyo. 2011) (quoting *Gould v. State*, 2006 WY 157, ¶ 24, 151 P.3d 261, 267-68 (Wyo. 2006)) (other citations omitted). "[I]t is a very difficult bar for an appellant to leap seeking to overturn a sentencing decision on an abuse of discretion argument." *Croy*, ¶ 7, 334 P.3d at 567 (citations omitted). This is due in large part to the wide range of factors a sentencing court may consider when imposing a sentence. *Id.* Those factors include the PSIR, the nature of the offense, the defendant's character, his remorse, his criminal history, and his risk of recidivism. *Id.*, ¶¶ 7-9, 334 P.3d at 567-68. *See also, Noel*, ¶ 42, 319 P.3d at 147-48.

[¶26] The district court expressly stated, both at the sentencing hearing and in its written judgment, that it had considered probation and determined it was not appropriate under the circumstances. It concluded instead that those circumstances called for the imposition of consecutive prison sentences. We see no abuse of discretion.

[¶27] The court decided Mr. Villafana did not "need much rehabilitation in the sex offender realm," and did not pose a "significant threat to [the] community." However, it determined the duration and seriousness of the offense—having sex with a 14 year-old child on at least two occasions over several months and getting her pregnant—required Mr. Villafana to be punished with a term of imprisonment. As the court explained, Mr. Villafana "need[ed] to understand that [he] did something wrong[.]" The court also noted that Mr. Villafana had not taken complete responsibility for his actions. This finding was reasonable, given Mr. Villafana's insistence that KK's parents are partially or wholly to blame for the sexual abuse, his statement to Dr. Turlington that KK initiated "sex with [him]," and his statement to the probation agent that KK "took advantage of [him]." The court decided a sentence of imprisonment was also necessary to inform the community that "it's felonious for an adult male to have sex with a child and that people who engage in that type of conduct and are found guilty will be incarcerated." The court's imposition of

consecutive prison sentences was patently reasonable to promote the sentencing objectives of retribution and deterrence.

### *Cruel or Unusual Punishment*

[¶28] Mr. Villafana argues the district court violated Article 1, § 14 of the Wyoming Constitution when it sentenced him to prison. As he acknowledges, he did not argue in the district court that his sentences violated the Wyoming Constitution. Normally, our review of such unpreserved errors is for plain error. *Jewkes v. State*, 2022 WY 90, ¶ 7, 513 P.3d 154, 158 (Wyo. 2022) (reviewing for plain error whether the district court's comments at sentencing violated the defendant's constitutional right to remain silent because the defendant did not object to those comments in the district court) (citations omitted). "To establish plain error, [Mr. Villafana] must show that (1) the record clearly reflects the alleged error; (2) the alleged error violates a clear and unequivocal rule of law; and (3) [he] was denied a substantial right resulting in material prejudice." *Id.*, ¶ 8, 513 P.3d at 158 (citing *Ridinger v. State*, 2021 WY 4, ¶ 33, 478 P.3d 1160, 1168 (Wyo. 2021), and *Mraz v. State*, 2016 WY 85, ¶ 55, 378 P.3d 280, 293 (Wyo. 2016)). However, as we explained in *Norgaard v. State*, 2014 WY 157, ¶ 7, 339 P.3d 267, 270 (Wyo. 2014), "the salient question we must answer in this case is really no different if addressed under the plain error standard or a simple *de novo* standard." Mr. Villafana's sentence clearly appears in the record and his substantial rights will likely be adversely affected if his consecutive sentences are found to violate the Wyoming Constitution's prohibition against cruel or unusual punishment. *Id.* Therefore, the only question to be resolved under the plain error standard is whether his sentences violate the Wyoming Constitution, which is a legal question reviewed *de novo*.[1] *Id.* (citing *Sen v. State*, 2013 WY 47, ¶ 43, 301 P.3d 106, 122 (Wyo. 2013)).

[¶29] Article 1, § 14 of the Wyoming Constitution prohibits the infliction of "cruel or unusual punishment." There is nothing "unusual" about a term of imprisonment for second-decree sexual abuse of a minor, and Mr. Villafana does not claim otherwise. Nor does he claim the harshness of his sentences is grossly disproportional to the gravity of his crimes or that his sentences are otherwise "cruel." *See Norgaard*, ¶ 11, 339 P.3d at 271 (to determine whether a sentence is proportional to the crime, we consider: "'(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions'" (quoting *Solem v. Helm*, 463 U.S. 277, 292, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637 (1983))); *Oakley v. State*, 715 P.2d 1374, 1377-78 (Wyo. 1986)

---

[1] Because we find no constitutional violation, we need not decide whether the rule of law allegedly violated was clear and unequivocal. *Norgaard*, ¶ 7 n.4, 339 P.3d at 270 n.4. We note, however, Mr. Villafana makes no attempt to show that there is a clear and unequivocal rule of law that sentencing an individual who may be a low risk to reoffend to prison is cruel or unusual punishment in violation of the Wyoming Constitution.

(applying *Solem* to determine the defendant's sentence is not cruel or unusual under the Wyoming Constitution). *Cf. Johnson v. State*, 2003 WY 9, ¶ 35, 61 P.3d 1234, 1249 (Wyo. 2003) (stating a life sentence in prison is not cruel, in and of itself). Rather, he argues the "consequences" of his sentences render them "cruel or unusual." Dr. Turlington claimed group therapy and incarceration with higher risk individuals will make Mr. Villafana more likely to reoffend than if he received individual therapy and supervised probation. As a result, Mr. Villafana argues sentencing him to prison "will fundamentally change who he is and increase his risk for sexual offense recidivism," which is "akin to torture" and against the interest of justice and society.

[¶30] Mr. Villafana's argument that imprisonment will increase his risk of sexual recidivism is speculative. Dr. Turlington opined only that "statistically" Mr. Villafana's risk of reoffending would increase if sentenced to prison and his risk of reoffending "could" increase if he was grouped with higher risk individuals, like those in prison. Moreover, his argument focuses only on one of the objectives of sentencing—preventing future harm— and only on one aspect of that objective. "The American criminal justice system has two general objectives—to punish wrongdoers and prevent future harm. Within each of these objectives are more specific goals like rehabilitation of offenders, etc." *Norgaard*, ¶ 30, 339 P.3d at 276 (citing *Prevention versus Punishment: Toward a Principled Distinction in the Restraint of Released Sex Offenders*, 109 Harv. L. Rev. 1711 (1996)). Preventing future harm means not only deterring the defendant from reoffending but also deterring others from committing similar crimes. The district court determined consecutive sentences of imprisonment were appropriate in this case to adequately punish Mr. Villafana for his criminal actions and to deter the public from committing similar crimes. We cannot say, under these circumstances, that sentencing Mr. Villafana to prison for a total of 10-14 years for sexually abusing a child on multiple occasions is either cruel or unusual.

## CONCLUSION

[¶31] The district court did not abuse its discretion at sentencing by refusing to allow Mr. Villafana to present evidence that KK's parents condoned his abuse of their daughter and then used that abuse for financial gain. Such evidence was not a mitigating circumstance or relevant to the purposes of sentencing. The court did not abuse its discretion by imposing consecutive sentences of imprisonment rather than probation. Mr. Villafana's sentences do not constitute cruel or unusual punishment under the Wyoming Constitution.

[¶32] Affirmed.

10