# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 88

APRIL TERM, A.D. 2023

August 30, 2023

TYLER BRYAN MARTINSON,

Appellant
(Defendant),

v.                                                              S-22-0241, S-23-0027

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Stuart S. Healy, III, Judge*

*Representing Appellant:*
> Casandra Ann Craven, Longhorn Law Limited Liability Company, Cheyenne, Wyoming.

*Representing Appellee:*
> Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Kristine R. Rude, Assistant Attorney General. Argument by Ms. Rude.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]     A jury convicted Tyler Bryan Martinson of six counts of aggravated child abuse, and the district court sentenced him to concurrent prison terms of four to eight years on each count. Mr. Martinson appeals his sentence and the court's subsequent denial of his motion for sentence reduction and correction. He claims the court failed to adequately consider probation and his sentence was thus illegal. He further argues his sentence was illegal because: the presentence investigation (PSI) report contained no sentencing recommendation; the child abuse statute under which he was convicted fails to distinguish between intentional and reckless acts for purposes of sentencing; and the sentence was cruel and unusual. Mr. Martinson also claims the court abused its discretion in denying his motion to reduce his sentence. We affirm.

## *ISSUES*

[¶2]     We rephrase the issues as follows:

> 1. Did the district court consider probation in sentencing Mr. Martinson?
>
> 2. Did the lack of a sentencing recommendation in the PSI report violate Mr. Martinson's due process and equal protection rights?
>
> 3. Does the child abuse statute, under which Mr. Martinson was convicted, violate the Wyoming Constitution because it fails to distinguish between intentional and reckless acts for purposes of sentencing?
>
> 4. Was Mr. Martinson's sentence cruel and unusual?
>
> 5. Did the district court abuse its discretion in denying Mr. Martinson's motion for a sentence reduction?

## *FACTS*

[¶3]     On January 2, 2021, Mr. Martinson took his three-month-old son, RM, to the Campbell County Memorial Hospital emergency room in Gillette, Wyoming. He and the child's mother told the intake nurse that RM "was having some popping while he was breathing" and was not moving his right leg. When Mr. Martinson removed him from his car seat, he screamed and cried, and the intake nurse believed him to be in the most pain she had seen in a three-month-old child.

1

[¶4]    RM had bruises on his upper abdomen, and x-rays showed four recent rib fractures, five recent leg fractures, and twenty-two older fractures in various stages of healing, for a total of thirty-one fractures. Mr. Martinson and RM's mother told the intake nurse that Mr. Martinson had been moving RM's legs to help relieve the child's gas, and "they mentioned that he may have been a little rough with him." Mr. Martinson told one investigator that RM's injuries were his fault, that he got angry, and "just lost it, I guess." In another interview, Mr. Martinson acknowledged RM's fractures could have come from him not being as gentle as he should have been with RM and that he went too far. He further admitted he became frustrated and irritated with RM and squeezed him to the point he could tell it hurt him. He also told of an occasion when RM choked on something and he held RM upside down by his legs and hit him on the back.

[¶5]    The State charged Mr. Martinson with thirty-one counts of aggravated child abuse but dismissed twenty-one of the charges before trial. The dismissed charges were for older rib fractures. The amended information alleged acts occurring between December 20, 2020, and January 2, 2021. Counts I through V alleged child abuse resulting in rib fractures, and Counts VI through X alleged child abuse resulting in leg fractures.

[¶6]    A jury found Mr. Martinson guilty of Counts I through V, child abuse resulting in rib fractures, and Count VI, child abuse resulting in a diaphyseal fracture of RM's right femur. It found him not guilty of the remaining counts. For each guilty verdict, the jury was required to find whether Mr. Martinson acted intentionally or recklessly in causing RM's injuries, and for each, it found he acted recklessly.

[¶7]    Mr. Martinson's defense theory was that RM suffered from a disorder called Ehlers-Danlos syndrome, a condition "associated with easy bruisability, muscle hypersensitivity, gastroparesis, and skeletal fractures," and his expert testified he had diagnosed the condition in RM. However, his expert agreed on cross-examination that there is "no medical consensus" the disorder can be diagnosed in children.

[¶8]    One of RM's treating physicians from Colorado testified that the team of physicians treating RM, which included genetic specialists, "agreed that the nature and constellation of [RM's] fractures didn't suggest any metabolic or bone disease." Concerning the injuries for which Mr. Martinson was found guilty of child abuse, she testified:

> Q.    Now, with the several rib fractures we've previously discussed, mechanistically, what causes those types of injuries?
>
> A.    In a child like this – so first of all, an infant's ribs are very cartilaginous, they're not hard. So even things like CPR would rarely cause a rib fracture in a child because they're

2

much more flexible. But when we see these kinds of fractures, it's really from grabbing, squeezing, bending of the ribs.

Q.     . . . With respect to the diaphyseal femur fracture, mechanistically what causes a fracture such as that?

A.     So that fracture is what we would call a spiral fracture. That means it spirals down the bone, and that would require some level of torsion or twisting.

Q.     Given all of the efforts you extended in this regard, were you ultimately able to come up with a medical diagnosis?

A.     Yes, I was.

Q.     And what was your medical diagnosis?

A.     Child physical abuse.

. . .

Q.     And then would medical child physical abuse, would that be a form of nonaccidental trauma?

A.     Yes.

Q.     Was this a medical diagnosis that the team collectively made, or is this something that you, alone, made?

A.     No, the team had consensus on this.

[¶9]    Following the jury's verdict, the district court ordered a presentence investigation. The Wyoming Department of Corrections performed the investigation and prepared a PSI report that did not include a sentencing recommendation. The agent who prepared the report wrote:

This writer has considered all of the sentencing options for the Defendant to include a term of incarceration, community supervision, and placement in an adult community corrections facility. Mr. Martinson presents as low risk for recidivism, has remained employed and although does not take full accountability for the nature of the injuries, shows remorse and has sought out counseling and medication to assist him. On the

other hand, the amount of injuries inflicted on this young child is impossible to comprehend and it is difficult to say whether or not he is suitable for supervision or poses a risk to the community. If given a prison sentence, he would be able to attend treatment while incarcerated and would not be an immediate threat. Mr. Martinson is a low risk; therefore, he does not qualify for the Adult Community Corrections Program or the ISP program. Should this Court determine community supervision is appropriate, this Agent would request DFS, or another third party, and the Probation Office work together with his counselors to determine the appropriate time to reunite.

[¶10]   At sentencing, the district court noted the lack of a sentencing recommendation in the PSI report, which it observed was unusual and likely reflected the difficulty the sentencing presented. Defense counsel made similar comments but did not object to the lack of a sentencing recommendation or any other aspect of the report. The court considered statements from Mr. Martinson's supporters and then heard argument from the State and Mr. Martinson. The State argued for a prison term of eighteen to twenty-five years on Counts I through V, to run concurrently, and a consecutive term of eighteen to twenty-five years on Count VI, for a total term of thirty-six to fifty years. Mr. Martinson requested a sentence of probation.

[¶11]   After hearing from both sides, the district court noted the difficulty its sentencing decision presented because Mr. Martinson acted recklessly, not intentionally. The court then weighed the need for punishment, rehabilitation, general and specific deterrence, and community protection; the nature and circumstances of the crime; and mitigating factors such as Mr. Martinson's acceptance of responsibility, youth, employability, and efforts at rehabilitation. After considering these factors, the court sentenced Mr. Martinson to prison terms of four to eight years on each count, to be served concurrently.

[¶12]   Mr. Martinson filed a notice of appeal but subsequently moved this Court for leave to file a motion in district court for reconsideration or correction of an illegal sentence and asked that we stay briefing pending the district court's ruling on the motion. We ruled that such leave was not required but granted it to avoid any jurisdictional questions or concerns, and we stayed briefing.

[¶13]   Mr. Martinson then filed a motion to correct his sentence, which he claimed was illegal for the reasons now asserted on appeal. Alternatively, he requested that the district court exercise its discretion to reduce his sentence to probation. He pointed to the Department of Corrections' placement of him at the Wyoming Honor Farm, a minimum-security facility, as evidence he was a proper candidate for probation. The district court

denied the motion, and Mr. Martinson appealed. This Court lifted the stay of Mr. Martinson's first appeal and consolidated his two appeals.

## *STANDARD OF REVIEW*

[¶14] Mr. Martinson claims his sentence was illegal on several grounds and that the district court abused its discretion in denying his motion for a sentence reduction. "Whether a sentence is illegal is a question of law that we review de novo." *Cruzen v. State*, 2023 WY 5, ¶ 11, 523 P.3d 301, 304 (Wyo. 2023) (quoting *Newnham v. State*, 2021 WY 54, ¶ 3, 484 P.3d 1275, 1276 (Wyo. 2021)). We review a district court's ruling on a motion for a sentence reduction for abuse of discretion.

> The district court has broad discretion in determining whether to reduce a defendant's sentence, and we will not disturb its determination absent an abuse of discretion. The sentencing judge is in the best position to decide if a sentence modification is appropriate and is free to accept or reject information submitted in support of a sentence reduction at its discretion. Our objective on review is not to weigh the propriety of the sentence if it falls within the sentencing range; we simply consult the information in front of the court and consider whether there was a rational basis from which the district court could reasonably draw its conclusion. Because of the broad discretion given to the district court in sentencing, and our significant deference on appeal, this Court has demonstrated many times in recent years that it is a very difficult bar for an appellant to leap seeking to overturn a sentencing decision on an abuse of discretion argument.

*Harper v. State*, 2023 WY 49, ¶ 5, 529 P.3d 1071, 1073 (Wyo. 2023) (quoting *Mitchell v. State*, 2020 WY 131, ¶ 7, 473 P.3d 1255, 1257 (Wyo. 2020)).

## *DISCUSSION*

### I. The record does not support Mr. Martinson's claim that the district court failed to consider a sentence of probation.

[¶15] Mr. Martinson claims the district court failed to consider a sentence of probation and his sentence was therefore illegal. He concedes the court's written sentence indicated it considered probation but asserts the court used the term "probation" only once in the sentencing hearing, and this he contends is evidence the court did not meaningfully consider probation. He also points to standards this Court has held should guide a court's

5

consideration of probation and contends the lack of verbal or written findings on those standards renders his sentence illegal. His claims find no support in the record or our law.

[¶16]   "While the trial court is not obligated to grant probation to a criminal defendant, it must consider an application for probation and, if such is not granted, include a statement in the written sentence expressly acknowledging that it considered the application." *Villafana v. State*, 2022 WY 130, ¶ 24, 519 P.3d 300, 307 (Wyo. 2022) (quoting *Monjaras v. State*, 2006 WY 71, ¶ 11, 136 P.3d 162, 164 (Wyo. 2006)). The district court's written sentence stated, "The Court has considered . . . the advisability of probation." It is thus clear, as Mr. Martinson concedes, the court complied with the requirement that it include a statement of its consideration in the written sentence.

[¶17]   Mr. Martinson nonetheless contends the consideration was inadequate because the district court's oral ruling did not include a weighing of the required standards and an express discussion of probation. "No particular amount of consideration of probation is required as long as the record discloses that the court considered it, however slightly." *Villafana*, 2022 WY 130, ¶ 24, 519 P.3d at 307 (quoting *Monjaras*, 2006 WY 71, ¶ 11, 136 P.3d at 164-65). Moreover, there is no requirement that a sentencing court make specific findings, set forth its reasons for denying probation, or even use the word "probation" during its oral pronouncement. *Monjaras*, 2006 WY 71, ¶¶ 9, 11, 136 P.3d at 164-65 (noting longstanding precedent that "law does not require a trial court to render specific findings in sentencing matters"); *Stoddard v. State*, 707 P.2d 176, 178 (Wyo. 1985) ("We do not believe that it is of any consequence that the trial court did not use some magic words to say affirmatively that it considered probation.").

[¶18]   Mr. Martinson is correct that this Court, in *Sanchez v. State*, cited American Bar Association (ABA) standards that it held "should be taken into account in the determination of a grant of probation[.]"[1] 592 P.2d 1130, 1138 (Wyo. 1979). We have also, however,

---

[1] Those ABA standards state:

> 1.3 Criteria for granting probation.
>
> (a) The probation decision should not turn upon generalizations about types of offenses or the existence of a prior criminal record, but should be rooted in the facts and circumstances of each case. The court should consider the nature and circumstances of the crime, the history and character of the offender, and available institutional and community resources. Probation should be the sentence unless the sentencing court finds that:
>
> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
>
> (ii) the offender is in need of correctional treatment which can most

6

consistently maintained since *Sanchez* that "[t]he decision whether or not to grant probation is discretionary." *Villafana*, 2022 WY 130, ¶ 24, 519 P.3d at 307 (quoting *Monjaras*, 2006 WY 71, ¶ 11, 136 P.3d at 164); *see also Beaulieu v. State*, 608 P.2d 275, 275-76 (Wyo. 1980) (addressing application of *Sanchez* and holding "[o]ur position is clear that an appropriate sentence is within the discretion of the trial judge[.]").Moreover, even when acknowledging the *Sanchez* holding, the Court has declined to require a sentencing court to set forth its reasons for denying probation. *Volz v. State*, 707 P.2d 179, 182 (Wyo. 1985).

[¶19] We have also recognized that circumstances other than a verbal recitation that probation was considered may be more persuasive evidence that the sentencing court considered probation. *Cohee v. State*, 2005 WY 50, ¶ 18, 110 P.3d 267, 273 (Wyo. 2005) (quoting *Volz*, 707 P.2d at 182); *see also Kenney v. State*, 605 P.2d 811, 812 (Wyo. 1980) ("Although statements of the trial court relative to consideration of probation are indicative that such was done, they are not the only facts by which the fact of such consideration can be determined."). For example, Mr. Martinson requested probation and argued numerous sentencing factors favored probation. That request placed the question of probation before the court and is indicative the court considered it. *See Burk v. State*, 848 P.2d 225, 236 (Wyo. 1993) (fact that defendant requested probation and put issue before court was evidence it was considered). Indeed, at one point in the hearing, the court expressly stated it was weighing the sentencing factors in consideration of Mr. Martinson's request for probation.

> The nature and circumstances of the offense. These factors don't stack up in favor of Mr. Martinson, really. Is it a crime of violence? Yes, it's a crime of violence, whether it's reckless or intentional, [the prosecutor] is right, it's a crime of violence. Did it involve children or vulnerable individuals? It involved a three-month-old baby. Did it involve a position of trust? It did. A father. Those factors weigh against Mr. Martinson in his request for probation.

[¶20] Additionally, the court indicated its struggle with the sentencing decision, noting the case involved "a lot of gray," and commenting that in considering the aggravating and

---

> effectively be provided if he is confined; or
>
> (iii) it would unduly depreciate the seriousness of the offense if a sentence of probation were imposed.
>
> (b) Whether the defendant pleads guilty, pleads not guilty or intends to appeal is not relevant to the issue of whether probation is an appropriate sentence.

*Id.* (cleaned up).

mitigating factors, "the scales of justice tip back and forth." This is further evidence the court was considering probation. *See Cohee*, 2005 WY 50, ¶ 18, 110 P.3d at 273 (court's struggle with sentencing viewed as evidence it considered probation).

[¶21]   The sentencing transcript shows the district court undertook a painstaking and exhaustive weighing of the sentencing factors to determine whether probation or incarceration was an appropriate sentence for Mr. Martinson. The court's written sentence confirmed that consideration. We thus reject Mr. Martinson's claim that a failure to consider probation rendered his sentence illegal.[2]

## II. The PSI report's lack of a recommendation on probation did not render Mr. Martinson's sentence illegal.

[¶22]   Mr. Martinson next contends that the PSI report's lack of a recommendation on probation violated his rights to due process and equal protection of the law under both the Wyoming and federal constitutions and his sentence was therefore illegal. This argument again finds no support in the law.

[¶23]   Mr. Martinson provides no analysis of the law governing a due process or equal protection claim. He simply asserts that Rule 32 of the Wyoming Rules of Criminal Procedure requires that a PSI contain a recommendation regarding probation and therefore the lack of such a recommendation in the report here violated his rights. Setting aside the lack of cogent argument to support this claim, the premise of Mr. Martinson's argument is wrong. Rule 32 does not require a PSI report to contain a sentencing recommendation. It provides:

> (2) Report. — When a report of the presentence investigation is required by the court and its scope is not otherwise limited, the report shall contain:
>
> (A) Information about the history and characteristics of the defendant, including prior criminal record, if any, financial condition, and any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in the correctional treatment of the defendant;
>
> (B) Verified information stated in a nonargumentative style containing an assessment of the financial, social, psychological, and medical impact upon, and cost to, any

---

[2] Mr. Martinson briefly argues that the State's arguments to the sentencing court and the PSI report focused on the general nature of his crime, contrary to the standards set forth in *Sanchez*. He does not, however, suggest the district court likewise did so in its weighing of the sentencing factors. The State's arguments and the PSI report are of no consequence if the court did not embrace them, and we thus do not address whether the record supports Mr. Martinson's contention.

individual against whom the offense has been committed and attaching a victim impact statement as provided in W.S. 7-21-103 if the victim chooses to make one in writing. In any event the report shall state that the victim was advised of the right to make such a statement orally at the defendant's sentencing or in writing. If the victim could not be contacted, the report shall describe the efforts made to contact the victim;

(C) Information concerning the nature and extent of non-prison programs and resources available for the defendant; and

(D) Such other information as may be required by the court.

W.R.Cr.P. 32(a)(2).

[¶24] In *Mehring v. State*, we explained that although PSI reports commonly include a sentencing recommendation, neither Rule 32 nor the statute governing presentence investigations requires a recommendation. 860 P.2d 1101, 1115 (Wyo. 1993); *see also* Wyo. Stat. Ann. § 7-13-303 (2023). We thus noted that when a sentencing recommendation is included in the report, it is surplusage and is not binding on the court. *Mehring*, 860 P.2d at 1115; *see also Dillard v. State*, 2023 WY 73, ¶ 10, 533 P.3d 179, 181 (Wyo. 2023) (district court not required to base sentence on recommendations of PSI report) (citing *Thomas v. State*, 2009 WY 92, ¶ 12, 211 P.3d 509, 513 (Wyo. 2009)); *Wright v. State*, 670 P.2d 1090, 1095 (Wyo. 1983) (sentencing court not required to accept recommendation of PSI report as sentencing is court's duty, not that of probation agent).

[¶25] The district court did not order the PSI report to include a sentencing recommendation, and our law does not otherwise require the recommendation. There is therefore no basis for Mr. Martinson's due process or equal protection claim.

### III. Mr. Martinson's claim that the statute under which he was convicted and sentenced violates the Wyoming Constitution is not supported by cogent argument.

[¶26] Mr. Martinson was convicted and sentenced under Wyo. Stat. Ann. § 6-2-503, which provides in relevant part:

Aggravated child abuse is a felony punishable by imprisonment for not more than twenty-five (25) years if in the course of committing the crime of child abuse, as defined in subsection (a) or (b) of this section, the person intentionally or recklessly inflicts serious bodily injury upon the victim or the person intentionally inflicts substantial mental or emotional

9

injury upon the victim by the torture or cruel confinement of the victim.

Wyo. Stat. Ann. § 6-2-503(c) (2023).

[¶27] Mr. Martinson contends his sentence was illegal because Wyo. Stat. Ann. § 6-2-503 violates the requirement of Article 1, Section 15 of the Wyoming Constitution that "[t]he penal code shall be framed on the humane principles of reformation and prevention." Specifically, he argues that because the statute does not distinguish between intentional and reckless acts, it is not framed on principles of reformation and prevention and is therefore unconstitutional. In so arguing, Mr. Martinson offers no analysis of the constitutional provision and cites no authority to support his argument that intentional and reckless acts that result in serious bodily injury to a child must be treated differently to satisfy the principles of reformation and prevention. We therefore do not consider this claim. *See Mitchell v. Rust*, 2023 WY 47, ¶ 19, 529 P.3d 1062, 1068 (Wyo. 2023), *rehearing denied,* (Court will not consider arguments unsupported by cogent argument and relevant authority) (citing *WyoLaw, LLC v. Off. of Att'y Gen., Consumer Prot. Unit*, 2021 WY 61, ¶ 37, 486 P.3d 964, 975 (Wyo. 2021)).

### *IV. Mr. Martinson's sentence was not cruel or unusual.*

[¶28] In his final constitutional claim, Mr. Martinson contends that his prison term of four to eight years violates the state and federal prohibitions on cruel and/or unusual punishment. We find no merit in this claim.

[¶29] The Eighth Amendment prohibits punishments that are barbaric or disproportionate to the crime committed. *Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983). Similarly, the Wyoming Constitution's prohibition against cruel or unusual punishment prohibits punishment that is grossly disproportional to the gravity of the crime. Wyo. Const. art. 1, § 14; *Villafana*, 2022 WY 130, ¶ 29, 519 P.3d at 308. To determine whether a sentence is proportional under either provision, we consider:

> (i) the gravity of the offense and the harshness of the penalty;
> (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions[.]

*Id.* (quoting *Norgaard v. State*, 2014 WY 157, ¶ 11, 339 P.3d 267, 271 (Wyo. 2014)); *Solem*, 463 U.S. at 292, 103 S.Ct. at 3011.

[¶30] This Court begins its analysis with consideration of the first of the three criteria and evaluates the remaining two only if warranted.

10

We will not engage in a lengthy analysis under all three of the *Solem* criteria, including a consideration of the sentences imposed on similarly situated defendants in this and other jurisdictions, except in cases where the mode of punishment is unusual or where the relative length of sentence to imprisonment is extreme when compared to the gravity of the offense (the first of the *Solem* criteria).

*Chapman v. State*, 2015 WY 15, ¶ 15, 342 P.3d 388, 393 (Wyo. 2015) (quoting *Oakley v. State*, 715 P.2d 1374, 1379 (Wyo. 1986)).

[¶31]  In addressing the first criterion, the gravity of the offense and the harshness of the penalty, Mr. Martinson's sole argument is as follows:

Here, Defendant was convicted of reckless action which harmed his child. The Jury was presented evidence of a genetic defect, and it appears that the jury believed that the child had said defect. The inference to be drawn is that it is unclear, and was unclear to the jury, whether the child's injuries occurred as a result of the actions of his father, or if the injury occurred in some other way.

[¶32]  Essentially, Mr. Martinson argues he did not cause his three-month-old child's injuries, and therefore his sentence was too harsh. This represents no more than a rejection of the jury's verdict. There was no confusion in the jury's verdict. It found Mr. Martinson guilty of six counts of aggravated child abuse and therefore necessarily found he caused his child's injuries.

[¶33]  As detailed in our recitation of the facts underlying Mr. Martinson's conviction, Counts I through V were for rib fractures caused by squeezing that Mr. Martinson admitted he knew caused his infant child pain. Count VI was for a femur fracture caused by torsion or twisting. We cannot find a total prison term of four to eight years extreme when compared to the gravity of Mr. Martinson's offenses. We therefore do not consider the remaining criteria of the proportionality test and reject Mr. Martinson's claim that his sentence was cruel and/or unusual.

### V. The district court did not abuse its discretion in denying Mr. Martinson's motion for a sentence reduction.

[¶34]  Rule 35(b) of the Wyoming Rules of Criminal Procedure governs motions for sentence reduction. It provides:

11

A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within one year after the sentence is imposed or probation is revoked . . . . The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision. The court may determine the motion with or without a hearing.

W.R.Cr.P. 35(b).

[¶35] Mr. Martinson argues the lack of a sentencing recommendation in the PSI report and the new information the district court had that he had been placed in a minimum-security facility should have led to a reduction of his sentence to probation. He thus contends the court abused its discretion in denying his motion.

[¶36] In its order denying Mr. Martinson's motion for a sentence reduction, the district court indicated it had considered the information he submitted. We have recognized that the sentencing court "is in the best position to decide if a sentence modification is appropriate and is free to accept or reject information submitted in support of a sentence reduction at its discretion[.]" *Dillard*, 2023 WY 73, ¶ 10, 533 P.3d at 181 (quoting *Harper*, 2024 WY 49, ¶ 8, 529 P.3d at 1074). As discussed herein, the lack of a sentencing recommendation in the PSI report was of no consequence, and the court was free to reject the Department of Corrections' placement decision as a basis to reduce Mr. Martinson's sentence. We find no abuse of discretion in the court's decision.

[¶37] Affirmed.